The opinion of the court was delivered by
Gibson, C. J.
The will of George Gottfreid Woelpper contains two. bequests, which are said .to be void for uncertainty. The first is a bequest, to “ St. Michael’s and Zion’s Churches,” of one thousand dollars, the interest of which is directed to be laid out, for ten years, in bread “for the poor of the Lutheran congrega *91 tion,” of which the testator was a member. The second is a bequest of five thousand dollars,to be put out in such manner that the interest shall be applied “towards the education of young' students, in the ministry of the German Lutheran congregation, under the direction of the vestrymen of St. Michael’s and Zion’s Churches.” These churches were jointly incorporated by the style of “ the ministers, vestrymen, and churchwardens of the German congregation, in and near the city of Philadelphia, in the state of Pennsylvania.”
At the common law of England these bequests could not be sustained, even where there is no uncertainty as to the person; if the bequest be on a trust not defined with reasonable certainty, it will fail; for it is clear the testator did not intend that the trustee should have the beneficial interest. Such a bequest, however, would take effect under the 43 Elizabeth, c. 4; and this has drawn the counsel to argue against the extension'of that statute to this country, a point that must be conceded. But we consider the principles which chancery has adopted, in the application of its principles to particular cases, as obtaining here, not, indeed, by force of the statute, but as part of our own common law; and where the object is defined, and we are not restrained by the inadequacy of the instrument which we are compelled to employ, nearly, if not altogether, we give relief to that extent that chancery does in England. And this part of our system has been produced by causes which worked as powerfully here as did those which produced the system of relief that sprung from the statute of charitable uses. The simplicity which marked the lives of our forefathers, enabled them to do without many institutions that, in the present state of society, are absolutely indispensable. Incorporations were almost unknown; yet, to all sorts of pious and charitable associations, in every part of the province, valuable bequests were made by those who were ignorant of the nieeties of expression necessary to accomplish the object at the common law, and who were not impressed with an opinion that it was at all necessary to consult counsel. Of this the will of the celebrated Dr. Franklin, which contains a bequest of money to be loaned for five years to young mechanics, is a striking instance. Yet such bequests have hitherto taken effect, without a question as to their validity. There are few worshipping congregations, of any pretensions to antiquity, who have not derived a part of their property from testamentary donations, that would have failed on the principles of the English common law. Nothing was more frequent than bequests to unincorporated congregations without the intervention of trustees; and, even where there was a corporation, it frequently happened that the corporate designation was mistaken or the trust vaguely defined: notwithstanding which, the testator’s bounty was uniformly applied to its object. ■ Surely a usage of such early origin and extensive application may claim the sanction of a *92 law; resting, as it does, on the basis of all our laws of domestic origin — the legislation of common consent.
The inquiry then is, ho'w far are the English decisions applicable to our circumstances ? Chancery has gone an immeasurable distance beyond the statute, — two words in the preamble having been laid hold on as the germ of a system of decisions, whose principles are not to be traced to any of the enacting clauses. It is recited in the preamble, that lands, tenements, goods, &c. had been “ given, limited, appointed, and assigned,” to certain enumerated charitable purposes, which had not been employed according to the charitable intent of the givers; — to remedy which, it is enacted that the chancellor may appoint commissioners to inquire of breaches of the trust in any such case, and make such orders and decrees as maybe necessary to reform abuses, and compel an application of the fund to the objects contemplated by the donor. The rest consists of details necessary to carry the powers thus granted into effect. There is, therefore, no direct provision to establish a gift by supplying defects in the conveyance, or to aid it, in respect of the words used or the person to whom given; yet it has generally been held that the statute supplies all defects.of assurance, when the donor is of capacity to dispose, and has an interest which he may transfer: so that a conveyance to a copyholder without a surrender, or by tenant in tail without a fine, or by a reversioner without attornment or enrollment, is taken to be a good limitation and appointment within the statute; and a gift of land to churchwardens, though void at law, ■was decreed in chancery, by force of the words “limited and appointed,” used in the preamble. So, also, of a gift of money for the use of the Church of Bale. “ A devise to the poor people maintained in the Hospital in the parish of St. Thomas, in Reading, for ever,” was held good, although the poor, not being a corporation, were incapable of taking by that name; and it was decreed, that the mayor and burgesses of Reading, who were a corporation, and had in fact the government of the Hospital, should take for the benefit of the poor. So, a devise that the parson and churchwardens in Thames Street, London, and four honest men of that parish, should sell the land and employ the money for the poor and charitable uses in that parish; although the parson and churchwardens were not a corporation to take land out of London, or to sell it for such uses. These instances are taken from Viner, (Charitable Uses, ./?. B.) to show that chancery graduates the relief, not so much by the provisions of the statute as the necessities of the occasion. So that it may be said most of the decisions are independent of the statute, and therefore, in a great degree, applicable to the same wants and necessities elsewhere.
It is not intended to attempt an outline of this branch of our equitable jurisdiction, or to point out those particulars in which it differs from that which has been assumed in England. This must be a *93 matter of gradual development, according to the exigency of the cases that may arise. It may safely be suggested, however, that in many particulars the relief which we shall be able to afford through the medium of common law forms, will necessarily fall short of that which would be administered by a chancellor. Indeed, no one would desire to see the doctrine of cy pres carried to the extravagant length that it was formerly, or witness the exercise of an arbitrary discretion in giving effect to a general intention to leave a sum of money to charitable purposes, to be designated thereafter, by disposing it to such charities as the court chooses to direct. No such discretion would be exercised by this court. On the other hand, not professing to found our jurisdiction on the statu te, we are not bound, like the English courts, to restrain it to cases specifically enumerated in the preamble: and there is therefore little hazard in affirming that a bequest such as in Morrice v. The Bishop of Durham, 9 Ves. 399, in trust to pay debts and legacies, and to dispose of the residue to such objects of benevolence and liberality as the legatee may approve, would be sustained here. For the present it is sufficient to say, that it is immaterial whether the person to take be in esse or not, or whether the legatee were at the time of the bequest a corporation capable of taking, or not, or how uncertain the objects may be, provided there be a discretionary power vested any where over the application of the testator’s bounty to those objects; or whether their corporate designation has been mistaken. If the intention sufficiently appears on the bequest, it would be held valid.
Since the argument of this cause and that of The Trustees of the Baptist Church v. Shewell's Executors, which depend on the same principles, on which it is deemed unnecessary to bestow a particular consideration, the public has been deprived of the services of two very valuable members of the court, — Chief Justice Tiughman and Mr. Justice Duncan, who we have the pleasure to say concurred in the opinion which is now expressed.
Judgment for the defendant — non obstante veredicto.