THE BOARD OF TRUSTEES FOR THE VINCENNES UNIVERSITY, PLAINTIFFS IN ERROR, v. THE STATE OF INDIANA.

In 1804, Congress passed an act, (2 Stat. at Large, 277,) "making provision for the disposal of the public lands in the Indiana Territory, and for other purposes," in

Trustees for Vincennes University *v.* State of Indiana.

.which it reserved from sale a township in each one of three districts, to be located by the Secretary of the Treasury, for the use of a seminary of learning.

In 1806, the Secretary of the Treasury located a particular township in the Vincennes district, for the use of that district; and when, in 1806, the territorial government incorporated a "Board of Trustees of the Vincennes University," the grant made in 1804 attached to this Board, although, for the two preceding years, there had been no grantee in existence.

Under the ordinance of 1787, made applicable to Indiana by an act of Congress, the territorial government of Indiana had power to pass this act of incorporation.

The language of the act of Congress, by which Indiana was admitted into the Union, did not vest the above township in the legislature of the State.

The Board of Trustees of the University was not a public corporation, and had no political powers. The donation of land for its support was like a donation by a private individual; and the legislature of the State could not rightfully exercise any power by which the trust was defeated.

THIS case was brought up from the Supreme Court of the State of Indiana, by a writ of error, issued under the 25th section of the Judiciary Act.

The manner in which the case arose, and the laws relating to it, are stated in the opinion of the court.

It was argued by *Mr. Judah,* with whom was *Mr. Dunham,* for the plaintiffs in error, and *Mr. O. H. Smith,* for the State of Indiana.

The counsel for the plaintiff in error contended:

1. That the effect of the reservation in the act of Congress passed in 1804, was a grant.

The defendant, and Judge Smith, of the Supreme Court of Indiana, assert that this is not a grant, because there was not a grantee in *esse;* and that the reservation could only become effectual to pass the title by an appropriation, to be made by Congress, or under its authority.

In Wilcox *v.* Jackson, (13 Peters, 498,) this court, at page 512, define "appropriation" as follows: "That is nothing more nor less than setting apart the thing for some particular use." And afterwards, in the same case, (page 513,) the court say: "But we go further, and say, that, whensoever a tract of land shall once have been legally appropriated to any purpose, from that moment, the land thus appropriated ] ecomes severed from the mass of public lands, and that no subsequent law, or proclamation, or sale, would be construed to embrace it, or operate upon it, although no reservation was made of it."

Was the Gibson township so appropriated? It was reserved for a special purpose. It was located in pursuance to the reservation. Was there any thing more necessary to set it apart for the particular use?

But, say the counsel for the State and Judge Smith, though

23*

appropriated, it was not granted, because there was no grantee in *esse*.

If, as a general rule, it is true, that there cannot be a grant without a grantee in *esse*, it is as true that there are exceptions.

A grant, in case of a charity, or of the dedication of land to a public use, is good without a grantee in *esse*. Town of Paulet *v.* Clark, 9 Cr. 292; Beaty *v.* Kurtz, 2 Pet. 566; Cincinnati *v.* White, 6 Pet. 435; and in Vidal *v.* Girard's Executors, 2 How. 127; at pages 192, 193, it is stated, that donations given to the establishment of colleges, &c., are charities in the sense of the common law.

2. That the territorial legislature had the power to apply to use the township appropriated by Congress, and did apply it by the act of incorporation.

The counsel for the State of Indiana made the following points:

*First.* The complainants have no such corporate existence as would authorize and empower them to sue. 2 B. A. 482, note a, last edition; and see the extracts from their records in evidence.

*Second.* The suit is barred by the statute of limitations. R. S. 1843, pp. 795, 799; Act of 1845 – 6, explanatory of Rev. Stat.

*Third.* The suit is barred by twenty years adverse possession, as the State, and those claiming under the State by purchase and lease, had held adversely more than twenty years before any suit was brought by the University to recover the possession, even if the former actions which were dismissed could aid this suit, which is denied.

*Fourth.* The case does not come within the principles of an executory devise, and would not avail the complainants even if it were an executory devise. 17 Serg. & Rawle, 88; 5 H. & J. 392; 9 Ohio, 203; 12 Mass. 537; 16 Pick. 107; 3 Pet. 101; 4 Dana, 355; 3 Pet. 146; 9 Ves. 399; 9 Mass. 419; 7 Ves. 69; 9 Ves. 399; 10 Ves. 522.

*Fifth.* The act of Congress of 1804, was a mere reservation from sale, to be afterwards appropriated to educational purposes, and neither vested the same in the complainants, nor divested the United States of the legal title. P. L. L. 104; 2 McLean R. 416; P. L. L. 2d part, 69; 1 Johns. R. 303; 9 Johns. R. 74; Wright's Ohio R. 144.

*Sixth.* The case does not embrace the principles of a dedication to public or pious uses, so as to sustain this claim. 2 Pet. 566; 6 Pet. 431, 498; 6 Paige, 639; 6 Wend. 667; 4 Paige, 510; 7 Ohio, 219.

*Seventh.* The act of Congress of 1816, vested the legal title to these lands in the State of Indiana, as a trustee, with power to direct to what object or institution, being "a seminary of learning," the trust fund shall be applied; and the State, having designated the State University, at Bloomington, as the "seminary of learning" to which the trust fund shall go, the complainants have no claim whatever, either in law or equity, against the State, the trustee of the fund. See act of Congress of 1816, act of 1818, and the several acts for the admission of the other new States into the Union.

*Eighth.* The doctrines of estoppel, in their most rigid application, can only permit the complainants to retain what they have already received, and for this the State will not contend.

*Ninth.* In any and all events, the funds were public funds, and the legislature of the State had competent authority to change their direction to any other seminary of learning at will. Had the funds been the private funds of the complainants, and had they been vested with them, there might have been some pretext for the assumption, that the acts of the Indiana legislature, endowing the State University, were unconstitutional. 4 Wheat. 430; 4 Pet. Con. Rep. 536.

Mr. Justice McLEAN delivered the opinion of the court.

This case is before us on a writ of error to the Supreme Court of the State of Indiana, under the 25th section of the Judiciary Act of 1789.

The bill was filed under an act of the legislature of Indiana, of 1846, which authorized the trustees of the Vincennes University to file a bill in chancery, in the nature of an act of disseisin against the State, to try their right to the seminary township in Gibson county. The facts stated in the bill are substantially as follows:

The Indiana Territory was organized by the act of Congress of the 7th of May, 1800, with the powers to legislate given by the ordinance of 1787. On the 26th of March, 1804, an act of Congress was passed, for the survey and disposal of the public lands, by which three land districts were established, and an entire township in each was reserved for the use of a seminary of learning, to be located by the Secretary of the Treasury. The boundaries of the Vincennes land district were the same as designated in a late treaty with the Wabash Indians. The Secretary of the Treasury, by letter of the 10th of October, 1806, located township No. 2 south range, No. 11 west, in Gibson county, for the use of a seminary in that district.

The act of the 29th November, 1806, and the supplement thereto, passed the 17th of September, 1807, established the

Vincennes University, and incorporated the same by the name of "The Board of Trustees of the Vincennes University." The corporation was duly organized at Vincennes, on the 6th of December, 1806, under the act, and has since continued. The second section of the act of incorporation, after reciting the seminary lands under the act of Congress, provided, " that the trustees, in their corporate capacity, or a majority of them, should be legally authorized to sell, transfer, convey, and dispose of any quantity, not exceeding four thousand acres, of said land, for the purpose of putting into immediate use the said university; and to have on rent the remaining part of said township to the best advantage, for the use of said public school or university."

In virtue of the above acts, the complainants became possessed of the said township of land, and so continued during the territorial government. The same rights and powers in the corporation, as they existed under the territorial government, were secured by the 1st section of the 12th article of the constitution of Indiana. Between the years 1806 and 1820, complainants sold 4,000 acres of the land, and rented a part of the residue. A college building was constructed by them at Vincennes.

On the 22d January, 1820, a joint resolution of the legislature of Indiana was approved, appointing a superintendent for the seminary township, with power to rent the improved lands, to collect the rents, and to account to the State. And, on the 2d of January, 1822, the legislature appointed commissioners to sell the lands in that township. This seems to have been done, on the assumption that the board of trustees had expired through their own negligence. The lands were sold, and the money received was paid into the State Treasury. A part of the consideration money on this sale had not been collected when this bill was filed.

The complainants pray that an account may be taken of the proceeds, and interest of the sales of the lands and the rents received by the state; and that the same may be paid to the complainants, &c.

The defendant's answer denies the equity of the bill, and relies upon the statute of limitations. It also denies that the territorial government had any power to incorporate the plaintiffs; that the title remained in the United States, it never having been appropriated to any special grantee; that under the act of Congress of the 19th of April, 1816, for the admission of the State of Indiana into the Union, the title to the land in question became vested in the State.

The act of Congress, which organized the territory of Indiana, provided, that so much of the ordinance of 1787 for the government of the territory of the United States north-west of the

Ohio River, as relates to the generally assembly therein, and prescribes the powers thereof, shall be in force, and operate in the Indiana Territory, &c. The ordinance declares, "that the Governor and Judges, or a majority of them, shall adopt and publish in the district, such laws of the original States, criminal and civil, as may be necessary, and best suited to the circumstances of the district, and report them to Congress, from time to time; which laws shall be in force in the district until the organization of the general assembly therein, unless disapproved of by Congress." Provision is made in the ordinance for the appointment of a legislative council, and it is then provided, that "the Governor, legislative council, and house of representatives, shall have authority to make laws, in all cases, for the good government of the district, not repugnant to the principles and articles in this ordinance."

Under the ordinance, the legislature of the territory was vested with general legislative powers, restricted only by the articles contained in that instrument. It had power to grant an act of incorporation, with all the functions necessary to effectuate its objects. There can be no question, therefore, that the corporate powers vested in the plaintiffs, by the legislature of the territory, were legitimately conferred. And these powers were not affected, and could not be affected by the constitution of the State. It provided that "all rights, contracts, and claims, both as respects individuals and bodies corporate, shall continue as if no change had taken place in this government."

If the Board of Trustees, by a failure to elect when vacancies occurred, or through any other means, became reduced to a less number than was authorized to act by the charter, the corporation was not thereby dissolved. In such a case, its franchises would be suspended only, until its functions were restored by legislative action. This was done by the act of the legislature of the 17th of February, 1838. In that act the territorial act of incorporation is recognized, the existence of six of the trustees admitted, the vacancies supplied, and the board, thus constituted, was organized. If, therefore, the corporation by non-user had become liable to a judicial process of forfeiture, after this act, such a procedure could not be instituted.

The proviso in the act of 1838, could only operate, so as to secure any rights which the State might be supposed to have, in the Gibson township.

The reservations for the seminaries of learning and for schools, are made in the same terms, and in some respects, must rest on the same principles. In all the Western States, north of the Ohio, similar reserves for schools and seminaries of learning have been made. In the case of Wilcox v. Jackson, (13 Peters,

498,) this court held, that a reservation set apart the thing reserved for some particular use; and that "whensoever a tract of land shall once have been legally appropriated to any purpose, it becomes separated from the public lands."

In the States where school lands have been reserved, the legislatures have enacted laws to carry out and effectuate the benign policy of the general government. Special authority has been given to individuals elected, in the respective townships, to lease the lands, sue for rents, &c., exercising, to some extent, corporate powers. The citizens within the township are the beneficiaries of the charity. The title to these lands has never been considered as vested in the State; and it has no inherent power to sell them, or appropriate them to any other purpose than for the benefit of schools. For the exercise of the charity under the laws, the title is in the township. No patent has been issued by the Federal government, in such cases, as it has not been considered necessary. For the sale of school lands, the consent of Congress has been obtained, as that changes the character of the fund.

The title to the seminary lands, it is contended, did not vest in complainants, as they are not named in the reservation, and had no existence for two years afterwards.

This question is not to be decided, on the principles which apply to an ordinary grant, from one individual to another. The title partakes of the nature of an executory devise, or a dedication of property to public use. In the case of Inglis *v.* The Sailors' Snug Harbor, (3 Peters, 126,) this court say, "What objection can there be to this as a valid executory devise, which is such a disposition of lands, that thereby no estate vests at the death of the devisor, but only on some future contingency?" If the words, "reserved for the use of a seminary of learning," were indorsed on a town plat when made, there is no doubt that the title would vest in a corporation created afterwards for the establishment and government of such an institution. If it be reserved for the public use, the title would vest in the public, so soon as a public should exist in the town. Trustees of the McIntyre Poor School *v.* The Zanesville Canal Company, 9 Ohio Rep. 203; Cincinnati *v.* The Lessee of White, 6 Peters, Rep. 435; Barclay et al. *v.* Howell's Lessee, 6 Peters, Rep. 498; New Orleans *v.* the United States, 10 Peters, Rep. 662.

Land, at common law, may be granted to pious uses, before there is a grantee in existence competent to take it; and in the mean time, the fee will be in abeyance. The Town of Pawlet *v.* Clark et al. 9 Cranch, 292; Witman *v.* Lex, 17 Serg. & Rawle, 88.

"When a corporation is to be brought into existence by some

future acts of the corporators, the franchises remain in abeyance, until such acts are done; and when the corporation is brought into life, the franchises instantaneously attach to it. There is no difference between the case of a grant of land or franchises to an existing corporation, and a grant to a corporation brought into life for the very purpose of receiving the grant. As soon as it is in esse, and the franchise and property become vested and executed in it, it is as much an executed contract, as if its prior existence had been established for a century." Dartmouth College v. Woodward, 4 Wheat. 518.

There was no uncertainty in this appropriation. The township was designated, and the purpose stated, for which it was reserved. And there can be no doubt, from the authorities, that the right vested, so soon as a capacity was given to the corporation to receive it; prior to this it remained in the federal government. This is the settled doctrine on that subject.

If, on general principles, the title to this township cannot be considered as vested in the State of Indiana, it is contended it so vested by the provision in the sixth section of the act of the 19th of April, 1816, which admitted the State into the Union. The provision is, " That one entire township, which shall be designated by the President of the United States, in addition to the one heretofore reserved for that purpose, shall be reserved for the use of a seminary of learning, and vested in the legislature of the said State, to be appropriated solely to the use of such seminary by the said legislature."

The words of the act seem to be so clear as to admit of but one construction. A township, in addition to the one formerly reserved, is appropriated and vested in the legislature. The former township is only referred to, to show that the one then appropriated was in addition to it. The Gibson township had before been appropriated. A part of it had been sold, and a part was held under leases. Whether we regard the words used, or their grammatical arrangement, the intention of Congress seems to be clearly expressed.

In the act of the 18th of April, 1818, for the admission into the Union, of the State of Illinois, a different phraseology is used in giving an additional township to the State. " That thirty-six sections, or one entire township, shall be designated by the President of the United States, together with the one heretofore reserved for that purpose, shall be reserved for the use of a seminary of learning, and vested in the legislature of the State," &c. Here both townships are as clearly vested in the State, as that one only is vested under the act admitting Indiana into the Union.

By this latter act, the Gibson Township Seminary was recognized, and its present government sanctioned.

It is argued that this is a public corporation, and that, consequently, the legislature of Indiana have a right to modify its charter, or abolish it, at its discretion. If the position assumed be sustainable the consequence stated will not be controverted.

In the case of Dartmouth College v. Woodward, (4 Wheat. 629,) Chief Justice Marshall says : "If the act of incorporation be a grant of political power, if it create a civil institution to be employed in the administration of the government, or if the funds of the college be public property, or if the State of New Hampshire, as a government, be alone interested in its transactions, the subject is one in which the legislature of the State may act, according to its own judgment, unrestrained by any limitation of its power, imposed by the Constitution of the United States." Again, he says, (634,) "So far as respects its funds, it is a private corporation. Do its objects stamp on it a different character? Are the trustees and professors public officers, invested with any portion of political power, partaking in any degree in the administration of civil government, and performing duties which flow from the sovereign authority?" He continues : "The character of civil institutions does not grow out of their incorporation, but out of the manner in which they are formed, and the objects for which they are created." "The right to change them is not founded on their being incorporated, but on their being the instruments of government, created for its purposes." "The trustees are not public officers, nor is it a civil institution, participating in the administration of the government; but a charity school, or a seminary of education, incorporated for the preservation of its property, and the perpetual application of that property to the objects of its creation."

In the same case, Mr. Justice Story says : "Public corporations are generally esteemed such as exist for public political purposes only, such as towns, cities, parishes and counties; and, in many respects, they are so, although they involve some private interests; but, strictly speaking, public corporations are such only as are founded by the government for public purposes, where the whole interests belong to the government."

The seminary township in question, was not a donation from the State, but from the United States. It was reserved and designated out of the public lands, before they were offered for sale, and consequently so munificent an endowment for a literary institution must have increased the value of the public lands, in that part of the State, and made them more desirable. And this consideration, no doubt, induced Congress to have designated, for seminary purposes, a township of land in each land district. Every purchaser of the public lands, in each dis-

Trustees for Vincennes University v. State of Indiana.

trict, acquired an interest in the reservation. And if these reservations had been judiciously managed, they would have constituted a fund, at this time, of at least two hundred thousand dollars each. This would have afforded the means of educating, in each land district, as many students, free of charge, as would ordinarily desire classical instruction. Such an advantage was too obvious to be overlooked, or not to be appreciated, by the purchasers of the public lands in these districts.

The legislative power of the Territory and State, in advancing the public interests, was bound to afford all the facilities necessary to carry out and secure the benign objects of Congress, in making these township reservations. This was done by a wise and liberal act, in regard to the Gibson township. The corporators were vested with all the necessary powers to carry out the trust. And for the purposes of the trust, the title became vested in them, as soon as they acquired a capacity to receive it. This corporation had no political powers, and could, in no legal sense, be considered as officers of the State. They were not appointed by the State. Their perpetuity depended upon the exercise of their own functions; and they were no more responsible for the performance of their duties, than other corporations established by the State to execute private trusts.

So far as regards the trust confided to the complainants, there is nothing which, by construction, can make it a public corporation. The donation in no sense proceeded from the State. It was made by the Federal government, and is no more subject to State power, than if it had been given by an individual for the same purpose. An act of incorporation being necessary, would not be withheld to give effect to a private donation of land, for the purpose of establishing a literary institution. Its benefits would be enjoyed by the public generally, but this would not make it a public corporation.

The complainants, by accepting and exercising their corporate powers, acquired certain rights, and made certain contracts, which could not be impaired by the legislature. They constituted an eleemosynary corporation, in which the State has no property, and can exercise no power to defeat the trust. But this has been done by the legislature, not only by appointing an agent to collect the funds due to the corporation, and paying them into the State treasury; but, by selling the lands, they have diverted the fund, for the preservation and management of which, the corporation was instituted. This was an extraordinary proceeding, and was wholly without authority. The result is, that the complainants are stript of their powers, and the University which they established, with the sanction of the legislature, is left without revenue.

The dismissal of the bill, in this case, by the Supreme Court of the State of Indiana, was erroneous, and it is hereby reversed; and the cause is transmitted to that court for further proceedings.

Mr. Chief Justice TANEY, Mr. Justice CATRON, and Mr. Justice DANIEL dissented.

Mr. Chief Justice TANEY.

I dissent from the opinion of the court.

I do not prop*e to enter fully into the argument of the case, because I concur entirely in the opinion of the Supreme Court of the State, which is set out at large in the record; and shall therefore briefly state the principles upon which my own opinion is founded.

1. It must be admitted that the State court had no jurisdiction in this case beyond that which the law of the State authorized it to exercise. And in revising their judgment, our jurisdiction is equally limited. The law, under which this suit was brought, authorized the Board of Trustees of the Vincennes University, to file a bill in chancery against the State, in the nature of an action of disseisin, for the purpose of trying the right of the trustees to the lands in question.

The trustees, therefore, are not entitled to a decree in their favor, unless they can show a legal title to the lands, such as would enable them to maintain the common-law writ of entry, *sur disseisin*, that is, they must be seised of the lands in fee-simple.

2. Indiana was created a separate territory, and its powers and rights, as a territorial government, defined by the act of 1800. This act certainly gave no power over the public lands, for it has no reference to that subject. It merely establishes the territorial government.

The act of 1804, under which the lands in question were reserved for the use of a seminary of learning, has no reference to the powers or duties of the territorial government, in relation to the lands reserved, or to any thing else. It merely provides for the sale of the public lands in the territory, reserving from sale this and other portions of them. But it does not transfer them to the territorial government which was then in existence. It retains them. I do not see how these laws, taken separately or together, can be construed to give the territorial government a right to dispose of them in any way, or divest the title which the United States held, and which this law directed to be retained.

3. This reservation from sale, as well as the reservation of the

Trustees for Vincennes University *v.* State of Indiana.

school sections in the several townships, undoubtedly dedicated them to the uses for which they were reserved; and they cannot be appropriated by the State to any other purpose. But the fund dedicated belonged to the United States, and they alone had the power to transfer it, and to designate the body by whom the trust, created by the act of Congress, should be administered. The law of the State complained of, does not attempt to appropriate the land to a different purpose from that to which it was dedicated. It has been sold and conveyed by the State, and the proceeds appropriated to the support of a seminary of learning in the State. And the only question before us is, whether the trustees have the legal title to these lands, and can recover them back from the persons to whom they were sold by the State, for the purpose of appropriating them to a different seminary.

4. The act of the territorial government of 1806, incorporating this board of trustees, does not grant nor profess to grant the lands to the board. And if it had done so, the act would have been void and inoperative, because the territorial legislature had no right to grant lands which belonged to the United States; nor to exercise any power over them, without the authority of Congress.

5. The act of Congress of 1816, by which Indiana was admitted into the Union as a State, grants these lands to the State for the purposes for which they were reserved. The State is made the trustee.

My brethren have put a different construction on this clause of the law of 1816, and regard this grant as extending only to the additional township mentioned in the law. But with every respect for their opinion, it appears plain to me that this township, as well as the additional one, are both granted to the State by Congress. And I am confirmed in this opinion, because, with all the research I have been able to make, I have not found a single instance in which lands reserved in a territory for the purposes of education, were not afterwards granted to the State, as the trustee to administer the trust, the school sections in the several townships, as well as others.

6. Upon these grounds, I think the plaintiffs in error have not a legal title to this land, and had no right to sell or dispose of it, nor in any way to control the proceeds; and that under the grant from Congress, in the act of 1816, the title and the right to administer the trust was vested in the State of Indiana.

7. The error in the opinion, appears to me to have arisen from regarding the reservation from sale for the purposes of education, as divesting the legal title of the United States, and putting it in abeyance, until some new body was brought into existence,

capable of taking the title as grantee, and administering the trust.

It is not necessary to this opinion to discuss the doctrine of abeyance, upon which so much learning and talent has been displayed by Mr. Fearne, in his treatise on Contingent Remainders. It is sufficient to state under what circumstances the title, in the eye of the law, is said to be in abeyance. And Comyns, in his Digest, tells us, that "when the fee or freehold of the land is not vested in any one, but stands solely in consideration of law, it is said to be in abeyance, or *in nubibus.*"

I cannot regard the title to lands reserved from sale by Congress, for the purposes of education, as standing in this condition. A reservation is not a grant. It does not pass the title out of the United States, but leaves it where it was before. The uniform practice of the government, and of judicial decision also, appears to have proceeded on the ground that the title remained in the United States, until it was afterwards transferred by the authority of Congress. It is not usual, it is true, to issue patents for these lands, but they have been granted by acts of Congress, which the courts have always recognized as valid conveyances. And I am not aware of any case in which the validity of these conveyances of reserved lands has been doubted by the court; or in which it has been suggested that the title was out of the United States, and in abeyance from the time of the reservation. If such be the result of a reservation, the subsequent conveyance of Congress is of no value. And who is to protect the reserved lands from trespasses and depredations, while the title is in abeyance?

In the case of Gaines and others v. Nicholson and others, reported in 9 Howard, 356, the title to a section reserved for schools, was the matter in dispute. It did not, it is true, involve the question now before us. But it appears, in that case, that the section was one of those reserved for schools in the different townships in the Territory of Mississippi, by an act of Congress passed in 1803; and that afterwards, as late as the year 1815, another act was passed, authorizing the County Court of each county in the territory to lease the sections so reserved, in order to improve them, and to apply the rents to purposes of education within the township; and also to proceed and recover damages against any persons found trespassing upon them. And this law contains an express provision that every lease, in virtue of this act, shall cease to have any force or effect after the first day of January next, succeeding the establishment of a State government. The trustees of the schools, who were parties to this suit, were appointed under a law of the State, and claimed under that appointment. The point in dispute, was

Trustees for Vincennes University. *v.* State of Indiana.

whether the opposing party had not a right prior and superior to the State, by virtue of an Indian reservation, made in the treaty by which the territory had been ceded to the United States. And in deciding the question, this court treated the acts of Congress granting the land to the State, and also the law of the State appointing the Commissioners, as valid and constitutional; and it is not suggested, in the opinion, that the inhabitants of the township had a legal title to the school section, or any right to appoint Commissioners to control and administer the fund, unless authorized to do so by a law of the State. In the case before us, therefore, if the act of 1816 does not vest the title in the State, it still remains in the United States, and not in the trustees.

8. If, however, these lands were conveyed to the trustees, by virtue of the act of the territorial legislature of 1806, yet they were but agents of the State, without any private individual interests, and have no ground therefore for this proceeding in equity against the State. The whole fund was created by the public for public purposes. And in the case of the Dartmouth College, (4 Wheat. 629,) the court said, " If the act of incorporation be a grant of political power, if it create a civil institution to be employed in the administration of the government, or if the funds of the college be public property, or if the State of New Hampshire, as a government, be alone interested in its transactions, the subject is one in which the legislature of the State may act according to its own judgment, unrestrained by any limitation of its power imposed by the Constitution of the United States." Here the funds are contributed entirely by the public for a public purpose, and these appellants have no private individual interest, and allege none in their bill in behalf of themselves or others, which entitles them to maintain a suit against the State. They are public agents for a public purpose, and nothing more, and so describe themselves. The laws of the State, which directed the appropriation of the fund to the uses for which it was dedicated, are therefore constitutional and valid, under the decision above referred to, and in my opinion the decree of the Supreme Court of the State ought to be affirmed.

## *Order.*

This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Indiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Supreme Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same

24*

is hereby, remanded to the said Supreme Court, in order that such further proceedings may be had therein, in conformity to the opinion of this court, as to law and justice may appertain.