261 F.2d 521
 Hubert A. EATON, Daniel C. Roane, and Samuel James Gray, Appellants,
v.
BOARD OF MANAGERS OF THE JAMES WALKER MEMORIAL HOSPITAL, a body corporate, Alan A. Marshall, Chairman, H. E. Hamilton, Secretary of the Board of Managers of the James Walker Memorial Hospital, the City of Wilmington, North Carolina, Dan D. Cameron, Mayor, and the County of New Hanover, North Carolina, Ralph T. Harton, Chairman of County Commissioners, Appellees.
 No. 7731.
 United States Court of Appeals Fourth Circuit.
 Argued October 24, 1958.
 Decided November 29, 1958.
 
 Robert R. Bond, Wilmington, N. C., and Conrad O. Pearson, Durham, N. C., for appellants.
 Cyrus D. Hogue, Jr., Wilmington, N. C., for appellee Board of Managers of James Walker Memorial Hospital.
 George Rountree, Jr., Wilmington, N. C. (John Bright Hill and Cicero P. Yow, Wilmington, N. C., on brief), for appellees City of Wilmington, N. C., et al.
 Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 The question in this case is whether certain Negro physicians practicing in Wilmington, North Carolina, are entitled to a declaratory judgment that they may not be excluded from courtesy staff privileges at the James Walker Memorial Hospital in that city solely on account of their race or color. The suit was brought by three physicians against the Board of Managers of the hospital, the City of Wilmington, and the County of New Hanover. Federal jurisdiction is based on the theory that the Board of Managers of the hospital, a corporation created by an act of the General Assembly of North Carolina, is an instrumentality of the City of Wilmington and the County of New Hanover and as such is an agency of the State of North Carolina, which is prohibited by the first section of the Fourteenth Amendment to the Federal Constitution from denying to any person within its jurisdiction the equal protection of the laws. Jurisdiction is also based on the civil rights statutes, 42 U.S.C.A. §§ 1981, 1983, which furnish redress for persons who are deprived of their constitutional rights under color of any State statute or usage.
 
 
 2
 The defendants filed a motion to dismiss the complaint on the ground that the hospital is a private corporation not subject to State control, and hence the discriminatory treatment complained of can not be regarded as State action cognizable in a Federal court. The District Judge being of the opinion (164 F.Supp. 191) that this position was sustained by the undisputed facts set forth in the pleadings, stipulation and affidavits of the parties, dismissed the complaint.
 
 
 3
 The City of Wilmington and the County of New Hanover were authorized by Chapter 23 of the Public Laws of North Carolina of 1881, to establish and maintain a hospital and accordingly acquired land, erected a building thereon and established a hospital under the control of the Board of Managers of the City Hospital of Wilmington. In 1900, James Walker, a charitable citizen of Wilmington, furnished funds to build a modern hospital on the site of the City Hospital, and the old building was razed and construction of the new building was begun. It was completed on July 19, 1901, after Mr. Walker's death. He specified in his will that his executors should provide such moneys as were necessary for the completion of the building and should deliver and turn it over to the proper authorities of the City and of the County to be held and used by them as a hospital for the sick and afflicted.
 
 
 4
 As a result of this benefaction the Board of Managers of the James Walker Memorial Hospital was chartered by Chapter 12 of the Private Laws of North Carolina of 1901. This statute noted the liberality of the donor in providing a modern hospital for the maintenance of the sick and infirm poor who might become a charge upon the City and County, as well as for other persons, and declared that it was desirable that the management of the hospital be removed as far as possible from the control of local municipal authorities, subject to changing political conditions, and to that end chartered the hospital as a body corporate, provided for the selection of the individuals to constitute the original Board of Managers and made them a self-perpetuating body empowered to succeed to the powers and duties of the Board of Managers of the City Hospital after the new hospital had been turned over to and accepted by the City and County. Upon the completion of the building in 1901, the City and County conveyed the tract of land upon which it stood to the new Board of Managers of the hospital to hold in trust for the use of the hospital so long as it should be maintained as such for the benefit of the City and County, with reverter to the City and County in case of its disuse or abandonment. Subsequently additional land was acquired and additional buildings were erected by the Board of Managers.
 
 
 5
 The hospital has been operated under the authority of this Board of Managers since its charter was granted in 1901. In that charter it was stipulated that New Hanover County should provide the sum of $4,800 annually and the City of Wilmington $3,200 annually, to be placed in the hands of the Board of Managers of the hospital for the maintenance and medical care of the sick and infirm poor admitted thereto. Subsequent acts of the General Assembly, passed in 1907, 1915, 1937, 1939, and 1951, authorized various appropriations to be made for these purposes by the City and County. All of these provisions, however, were declared to be unconstitutional by the Supreme Court of North Carolina in Board of Managers of the James Walker Memorial Hospital of Wilmington v. City of Wilmington, 1953, 237 N.C. 179, 74 S.E.2d 749. in which the hospital sought a declaratory judgment adjudging the rights of the hospital to support from the City and County for the care of their sick and indigent. The court held that the appropriations for the hospital contained in the acts of 1901, 1907 and 1915 were invalid since the support of the hospital was not a necessary governmental expense and had not been approved by a majority of the qualified voters of the area, which is a prerequisite to the validity of an appropriation for an unnecessary governmental expense under Article VII, Section 7, of the State Constitution. The provisions for the payment of moneys to the hospital under the acts of 1937, 1939 and 1951 were also held invalid on the ground that they contravened the provisions of Article II, Section 29, of the State Constitution, adopted by the vote of the people of the State in 1916, which prohibited the passage of any local act relating to health.
 
 
 6
 The Supreme Court of North Carolina, however, pointed out in the cited case that the General Assembly of the State has power to authorize the governing body of any city or county to contract with the hospital for the medical care and hospitalization of the sick and poor of the area. Such a statute had previously been enacted for certain other towns and counties, and a similar act, applicable to the City and County in this case, was passed by the General Assembly of North Carolina, in Chapter 878 of the acts of 1953, G.S. § 153-176.1, under which funds have been paid to the James Walker Memorial Hospital by the City and County under contract. The amounts thus paid and the total cash revenues of the hospital from 1952 to 1957 were as follows:
 
 
 7
 Receipts
 City of Wilmington Total All
 Year & County of New Hanover Cash Receipts

 1952 ................ $24,149.60 ................. $ 922,061.78
 1953 ................ 21,672.75 ................. 974,520.02
 1954 ................ 60,867.32 ................. 1,081,903.33
 1955 ................ 46,285.40 ................. 1,081,144.80
 1956 ................ 64,804.36 ................. 1,228,403.34
 1957 ................ 60,271.05 ................. 1,412,509.56
 
 
 8
 At the time of the trial of the suit the City did not have a contract with the hospital and provided no revenue to it, but the County operated under a contract dated May 6, 1957, for the care of certified indigent patients whereby it paid a specified per diem, which amounted to $16 per day per patient. The per diem cost was between $18 and $19.
 
 
 9
 On March 19, 1955, the plaintiffs applied for staff privileges at the hospital, which consisted of allowing the use of private rooms and pay wards for the patients of physicians. The applications were denied, and for the purpose of this action it is conceded that the applications were properly made but were denied by the Board of Managers solely on account of the race of the applicants. The plaintiffs argue that this action of the Board amounts to action by the State which the Federal court has power to interdict. They rest their contention mainly upon the following circumstances:
 
 
 10
 1. The establishment of the original hospital on the present site and the appropriation of certain moneys for its maintenance by the City and County under authority of Chapter 23 of the act of the General Assembly of North Carolina, 1881.
 
 
 11
 2. The operation of the hospital by the City and County thereafter until 1901.
 
 
 12
 3. The declarations in Chapter 12 of the act of 1901, incorporating the James Walker Memorial Hospital, that the City and County had been provided with a modern hospital for the care of the sick and infirm poor of the locality and that the City and County should appropriate certain moneys annually for the maintenance of the hospital, and also that the Board of Managers named in the act should succeed to all the powers and duties of the Board of Managers of the former City Hospital as soon as the new building was completed and turned over to the City and County and accepted by them.
 
 
 13
 4. The declaration in the will of James Walker that after the completion of the new hospital his executors should deliver and turn it over to the authorities of the City and County to be held and used by them as a hospital for the treatment of the sick and infirm.
 
 
 14
 5. The provisions of the deed by which the site of the hospital was conveyed by the City and County to the Board of Managers of the James Walker Memorial Hospital in 1901, in trust for the use of the hospital so long as it should be maintained for the benefit of the City and County, with reverter to the City and County in case of disuse or abandonment.
 
 
 15
 6. The substantial appropriations for the support and maintenance of the hospital by the City and County under the authority of acts of the General Assembly between 1907 and 1951. It is said that these appropriations were made to carry out the provisions of Article XI, Section 7, of the State Constitution, which declares the duty of the General Assembly to make beneficent provision for the poor and unfortunate and to appoint a Board of Public Charities to supervise all State charitable and penal institutions.
 
 
 16
 With respect to the decision in Board of Managers of the James Walker Memorial Hospital of Wilmington v. City of Wilmington, supra, it is said that the court did not declare it beyond the power of the State to make appropriations for the maintenance of a hospital but merely held that the appropriations referred to were invalid because they had not been made in the manner prescribed by the State Constitution; and hence the decision may not be taken as authority for the proposition that the hospital is not an instrumentality of the State.
 
 
 17
 With respect to the act of 1901 creating the new hospital corporation and the deed of 1901 conveying to it the site of the hospital, it is contended that the City and County were thereby made the beneficiaries of the trust and the Board of Managers of the hospital was made the trustee and an agency of the State subject to the provisions of the Federal Constitution. Reference is made to Commonwealth of Pennsylvania v. Board of Directors of City Trusts of City of Philadelphia, 353 U.S. 230, 77 S.Ct. 806, 1 L. Ed.2d 792, where it was held that the managing board of Girard College was made an agency of the State by an act of the Pennsylvania Legislature and therefore could not exclude Negro children as directed by the will of the founder.
 
 
 18
 Finally, it is contended, on the authority of our decision in Kerr v. Enoch Pratt Free Library of Baltimore City, 4 Cir., 149 F.2d 212, that the establishment of the Board of Managers of the James Walker Memorial Hospital, as an independent self-perpetuating body by the act of North Carolina Legislature in 1901, is not inconsistent with its status as an instrumentality of the State. It is emphasized that in the cited case we held that the Board of Trustees of the Library was an agency of the State of Maryland although it had been given control of the institution with the power of self-perpetuation by an act of the Maryland Legislature.
 
 
 19
 The plaintiffs rightfully confine their effort on this appeal to showing that the hospital is an instrumentality of the State. They do not argue that the exclusion of qualified physicians solely because of their race from an institution devoted to the care of the sick is indefensible, as they might well do if this court was the proper forum to determine the ethical quality of the action. As a Federal court we are powerless to take into account this aspect of the case. We may not interfere unless there is State action which offends the Federal Constitution. From this viewpoint we find no error in the decision of the District Court for the facts clearly show that when the present suit was brought, and for years before, the hospital was not an instrumentality of the State but a corporation managed and operated by an independent board free from State control.
 
 
 20
 This has not always been the case. In 1881, when the hospital was established, and thereafter during the period ending in 1901, when it was supported and operated by municipal authority, it might well have been described as a State agency even though the funds for its operation had been illegally appropriated by the municipalities. But in that year a basic change took place when, taking advantage of the benificence of Mr. Walker, the City and County conveyed the land on which the old building stood to the Board of Trustees of the James Walker Memorial Hospital, a new corporation created by an act of legislature with full powers of management and self-perpetuation. At that time a new building was erected on the site with funds provided by the benefactor. It would seem from the evidence that the hospital then ceased to be a public agency, although in the subsequent years until 1951 it received certain financial support from the City and County, the amount of which the record before us does not reveal. Any doubt on this point vanished in 1952 and 1953, when annual appropriations came to an end as the result of the decision of the Supreme Court of the State, and patients sent to the hospital by the local governments were treated and paid for under contract on a per diem basis. It is beyond dispute that from that time on the civic authorities have had no share in the operation of the hospital and the Board of Managers have been in full control.
 
 
 21
 This conclusion is not precluded by the terms of the deed through which the corporation gained title to the land upon express trust to operate the hospital for the benefit of the City and County. A very similar situation was before the Supreme Court of the United States in Board of Trustees of Vincennes University v. State of Indiana, 14 How. 268, 14 L.Ed. 416, where it was held that a grant of public land by an act of Congress to the Board of Trustees of the University did not make the Board a public corporation. The Court said, 14 How. at pages 276-277:
 
 
 22
 "* * * The corporators were vested with all the necessary powers to carry out the trust. And for the purposes of the trust, the title became vested in them, as soon as they acquired a capacity to receive it. This corporation had no political powers, and could, in no legal sense, be considered as officers of the State. They were not appointed by the State. Their perpetuity depended upon the exercise of their own functions; and they were no more responsible for the performance of their duties, than other corporations established by the State to execute private trust.
 
 
 23
 "So far as regards the trust confided to the complainants, there is nothing which, by construction, can make it a public corporation. * * *"
 
 
 24
 The course of the decision in the case of Girard College also illustrates the point.[1] In Commonwealth of Pennsylvania v. Board of Directors of City Trusts of City of Philadelphia, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792, the Supreme Court held that the exclusion of Negro boys from Girard College violated the Fourteenth Amendment although the college was established with funds provided under the will of Stephen Girard, which directed that admissions be limited to white male orphans. The will named the City of Philadelphia as trustee but subsequently, and for a long period of years before the institution of the suit, the trust had been administered by the Board of Directors of City Trusts of Philadelphia, a body created by an act of the Pennsylvania Legislature. The Court held that under the terms of the statute the Board was an agency of the city and therefore the exclusion of Negro boys was unconstitutional. After this decision the Board was removed as trustee and the college was turned over to private trustees under an order of the Orphans' Court of Philadelphia and the restriction of the college to white students was continued. On appeal to the Supreme Court of Pennsylvania it was held that this procedure was not inconsistent with the mandate of the Supreme Court of the United States and did not violate the Fourteenth Amendment. In re Girard College Trusteeship, 391 Pa. 434, 138 A.2d 844. The case was then appealed to the Supreme Court of the United States, which granted a motion to dismiss the appeal and also, treating the case as a petition for writ of certiorari, denied the writ. Later, on October 13, 1958, reconsideration of this decision was denied, 79 S.Ct. 14.
 
 
 25
 The State Supreme Court pointed out that the Supreme Court of the United States based its decision in 1957 only on the ground that the managing board then in control of the college had been constituted an agency of the State by the enabling act and was therefore subject to the Fourteenth Amendment; but that the new board thereafter set up by the Orphans' Court of Philadelphia, being composed of private citizens, was not a State agency and was therefore free to carry out the terms of the Girard will. The court held that the inability of the old Board to discriminate in the admission of students to the college affected the trustee and not the trust and that it was within the power of the Orphans' Court to substitute a new trustee in order to effectuate the charitable purposes of the testator. The court also held that the removal of the old and the substitution of new trustees by the court did not constitute State action within the scope of the Amendment; and it rejected the theory that State action is inherent in charitable trusts generally even if they are not administered by an agency of the State. We find no decision to the contrary.
 
 
 26
 The plaintiffs contend that the pending case is indistinguishable from our decision in Kerr v. Enoch Pratt Free Library of Baltimore City, 149 F.2d 212, where we held that the Board of Trustees of the Library was a City agency notwithstanding the fact that its charter provided that it should be managed by a private board of trustees created by the donor and clothed with power to appoint their successors. In our view the cases are clearly distinguishable. The similarity between them is confined to the one circumstance: that in each instance a self-perpetuating governing body had been placed in charge by an act of legislature in compliance with the wishes of the donor. The distinguishing features, on the other hand, are decisive. The Library was completely owned and largely supported from the beginning by the City and at the time the suit was brought it was occupying a modern building erected by the City on land owned by the City and, more importantly, substantially all of the revenues of the institution were derived from the City in the form of budgetary appropriations. In short, it was shown that the Library was so completely subsidized by the City that in practical effect its operations were subject to the City's control. In the pending case, as we have shown, the hospital is neither owned nor controlled by the municipalities and the revenues derived from them on a contract basis amount to less than 4½ per cent of its total income.
 
 
 27
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 For an interesting discussion of this case by Elias Clark, see Charitable Trusts, The Fourteenth Amendment and the Will of Stephen Girard, 66 Yale L.J. 979