G. C. SIMKINS, Jr., A. V. Blount, Jr., Walter J. Hughes, Norman N. Jones, Girardeau Alexander, Milton H. Barnes, W. L. T. Miller, E. C. Noel, III, F. E. Davis, A. J. Taylor, and Donald R. Lyons, Plaintiffs,

v.

The MOSES H. CONE MEMORIAL HOSPITAL, a Corporation, Harold Bettis, Director of the Moses H. Cone Memorial Hospital, and Wesley Long Community Hospital, a Corporation, and A. O. Smith, Administrator of the Wesley Long Community Hospital, Defendants, United States of America, Intervenor.

No. C–57–G–62.

United States District Court
M. D. North Carolina,
Greensboro Division.

Dec. 5, 1962.

Jack Greenberg, James M. Nabrit, III, and Michael Meltsner, New York City, and Conrad O. Pearson, Durham, N. C., for plaintiffs.

Falk, Carruthers & Roth, Greensboro, N. C., for defendants Moses H. Cone Memorial Hospital and Harold Bettis, Director of Moses H. Cone Memorial Hospital.

McLendon, Brim, Holderness & Brooks, Greensboro, N. C., for defendant Wesley Long Community Hospital and A. O. Smith, Administrator of Wesley Long Community Hospital.

Burke Marshall, Asst. Atty. Gen., Washington, D. C., William H. Murdock, U. S. Atty. for Middle District of North Carolina, Greensboro, N. C., St. John Barrett, and Howard A. Glickstein, Attorneys, United States Department of Justice, Washington, D. C., for intervenor, United States of America.

STANLEY, Chief Judge.

Plaintiffs, Negro citizens, suing on behalf of themselves and other Negro physicians, dentists and patients similarly situated, seek injunctive and declaratory relief, alleging that the defendants have discriminated against them because of their race, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The relief sought is an injunction restraining the defendants from continuing to deny the admission of physicians and dentists to hospital staff privileges, and the admission of patients to hospital facilities, on the basis of race. Plaintiffs also seek a declaratory judgment that Section 291e(f) of Title 42, United States Code, and Regulation 53.112 of the Public Health Service Regulations, issued pursuant thereto, are unconstitutional and void as violative of the Fifth and Fourteenth Amendments to the United States Constitution for the reason that said provisions provide for

the construction of hospital facilities, and the promotion of hospital services, on a racially segregated basis. Since the constitutionality of an Act of Congress affecting the public interest had been drawn into the question, the United States, pursuant to 28 U.S.C. § 2403 and Rule 24(a) of the Federal Rules of Civil Procedure, moved to file a pleading in intervention.

The complaint was filed on February 12, 1962. On April 2, 1962, the defendants moved to dismiss the action for lack of jurisdiction of the subject matter for the reason that the plaintiffs were seeking redress for the alleged invasion of their civil rights by private corporations and individuals. On May 4, 1962, the plaintiffs moved for summary judgment and a preliminary injunction. On May 8, 1962, the United States moved to intervene. On June 26, 1962, the Court held a full hearing on all pending motions, at the conclusion of which an order was entered granting the motion of the United States to intervene. On July 12, 1962, an order was entered denying plaintiffs' motion for a preliminary injunction, the Court being of the opinion that the injunction was not required pending the final determination of the action on the plaintiffs' motion for summary judgment and the defendants' motion to dismiss.

At the hearing conducted on pending motions, the parties conceded that there was no dispute as to any material fact, and the defendants conceded that if, on the basis of the pleadings, exhibits, affidavits and admissions filed, it should be determined that the defendant hospitals were instrumentalities of the State, the plaintiffs were entitled to the injunctive relief sought. On the other hand, the plaintiffs conceded that if the defendant hospitals were not shown to be instrumentalities of the State, the Court lacked jurisdiction and the action should be dismissed.

At the conclusion of the hearing conducted on June 26, 1962, the Court gave the parties a specified time within which to file proposed findings of fact, conclu-

sions of law, and briefs. The requests of the parties for findings of fact, conclusions of law, and briefs having been received, the Court, after considering the pleadings and evidence, including exhibits, affidavits and admissions filed, and briefs and oral arguments of the parties, and finding no dispute as to any material fact, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

## FINDINGS OF FACT

1. The plaintiffs, A. V. Blount, Jr., Walter J. Hughes, Norman N. Jones, Girardeau Alexander, E. C. Noel, III, and F. E. Davis, are medical doctors licensed to practice and practicing medicine in the City of Greensboro, North Carolina. The plaintiffs, George C. Simkins, Jr., Milton Barnes and W. L. T. Miller, are dentists licensed to practice and practicing dentistry in the City of Greensboro, North Carolina. These plaintiffs, all citizens and residents of the United States and the State of North Carolina, residing in the City of Greensboro, North Carolina, seek admission to staff facilities at The Moses H. Cone Memorial Hospital and the Wesley Long Community Hospital without discrimination on the basis of race.

2. The plaintiffs, A. J. Taylor and Donald R. Lyons, are citizens and residents of the City of Greensboro, North Carolina, and are patients of some of the physicians and dentists referred to in the preceding paragraph. These plaintiffs desire admission to the defendant hospitals for the treatment of their illness, and to be treated by their present physician or dentist, without discrimination on the basis of race.

3. The defendants, The Moses H. Cone Memorial Hospital (hereinafter sometimes referred to as "Cone Hospital"), and Wesley Long Community Hospital (hereinafter sometimes referred to as "Wesley Long Hospital"), are North Carolina corporations, and each has established, owns, and maintains a general hospital in the City of Greensboro, North Carolina. Both hospitals are

non-profit, tax-exempt and State licensed. The defendant, Harold Bettis, is the Director of Cone Hospital, and the defendant, A. O. Smith, is the Administrator of Wesley Long Hospital. Prior to the institution of this action, the plaintiff physicians and dentists were denied staff appointments to Cone Hospital, and were denied forms for use in making applications for admission to the staff of Wesley Long Hospital. As a matter of policy, neither hospital grants staff privileges to Negro physicians or dentists.

4. Negro patients are admitted to Cone Hospital on a limited basis, and on terms and conditions different from the admission of white patients. Wesley Long Hospital denies admission to all Negro patients. By the policy of excluding Negro physicians and dentists, Negro patients admitted to Cone Hospital are denied the privilege of being treated by their own physicians and dentists.

5. Cone Hospital was originally incorporated as a private corporation under the general corporation laws of the State of North Carolina, under the name of The Moses H. Cone Memorial Hospital, Incorporated, pursuant to Articles of Incorporation which were filed in the office of the Secretary of State of the State of North Carolina on May 29, 1911. There were ten original incorporators, all of whom were private citizens, and four of whom were members of the Cone family, and these ten incorporators were named as the first Board of Trustees of the corporation. The original Articles of Incorporation stated the intention of applying for a legislative charter in order that the corporation might be permitted to drop the word "Incorporated" from its name, and to provide for a Board of Trustees "with perpetual succession." The legislative charter of the corporation was enacted as Chapter 400 of the Private Laws of North Carolina, Session of 1913. This Private Act "fully ratified, approved, and confirmed" the original Articles of Incorporation, and provided that, in carrying out its corporate purposes, the corporation should continue to "have and enjoy all the powers and privileges conferred by the general corporation law of this State upon corporations of like character," but that it should not become effective as the act of incorporation unless and until it was accepted as such by the original incorporators of the corporation. The charter provided for a Board of Trustees of fifteen members, three to be appointed by the Governor of North Carolina, one by the City Council of the City of Greensboro, one by the Board of Commissioners of the County of Guilford, one by the Guilford County Medical Society, one by the Board of Commissioners of the County of Watauga, and that Mrs. Bertha L. Cone, who was the founder and the principal benefactor of the corporation, should have the power to appoint the remaining eight members so long as she might live. It was further provided that, after the death of Mrs. Bertha L. Cone, or earlier if she should renounce her right to appoint, the eight trustees originally appointed by her should prepetuate themselves by the election of the Board of Trustees. Mrs. Bertha L. Cone died in 1947, and the charter of the corporation was amended in 1961 to eliminate the appointment of one trustee by the Board of Commissioners of the County of Watauga. The charter now provides, and has provided at all times pertinent to this action, that the eight trustees originally appointed by Mrs. Bertha L. Cone, and the one trustee originally appointed by the Board of Commissioners of the County of Watauga, or a total of nine members of the fifteen-member Board, are to be perpetuated through the election of the Board of Trustees. The trustees appointed by public officials or agencies have always been a minority of the trustees of the corporation.

6. The Cone Hospital owns, and has owned since 1911, the fee simple title to the real property on which its hospital is located. Its Board of Trustees has the exclusive power and control over all real and personal property of the corporation, and all the institutional services and activities of the hospital.

7. The Wesley Long Hospital is a "non-profit and charitable corporation" with no capital stock. The corporation was formed many years ago under the laws of the State of North Carolina to conduct, without profit and for charitable and humane purposes, a general hospital in the City of Greensboro, North Carolina. The title to all of its property, both real and personal, is vested in the corporation. The charter of the corporation makes the Board of Trustees, consisting of twelve members, and all citizens of the City of Greensboro, a self-perpetuating body. The Board of Trustees has the exclusive power and control over all real and personal property of the corporation, and all the institutional services and activities of the hospital.

8. Both Cone Hospital and Wesley Long Hospital are exempt from ad valorem taxes assessed by the City of Greensboro and the County of Guilford, North Carolina. For the fiscal year 1961–1962, the City tax rate was $1.27 per $100.00 valuation, and the County tax rate was $0.82 per $100.00 valuation.

9. Both defendant hospitals are licensed by the State of North Carolina, and have complied with the licensing procedures and standards set out by the North Carolina Hospital Licensing Act[1] and the rules and regulations of the North Carolina Medical Care Commission.[2] These statutes require every hospital in the State of North Carolina, public or private, profit or non-profit, to be licensed to operate by the Medical Care Commission.

10. Both defendant hospitals are parts of a joint United States-North Carolina program of providing grants of United States funds under the Hill-Burton Act,[3] and both have received funds under the Act in aid of their construction and expansion programs. The North Carolina State Plan, as approved by the Surgeon General of the United States under the Hill-Burton Act, has programed separate hospital facilities for separate population groups in the Greensboro area, and the Hill-Burton funds for the two defendant hospitals were allocated and granted to, and were accepted by, said hospitals with the express written understanding that admission of patients to the proposed facilities might be denied because of race, creed or color.

11. Project Application NC–86 of the Cone Hospital reveals that for general hospital construction totaling $5,277,023.32, the Federal Government contributed $462,000.00. On February 4, 1954, Cone Hospital approved an agreement for this project. On April 12, 1954, the North Carolina Medical Care Commission approved the agreement. On April 15, 1954, the Surgeon General of the United States, acting through the Regional Medical Director of the Public Health Service, approved the agreement. This application states that Cone Hospital had given adequate assurance that the facility would be operated without discrimination because of race, creed or color. However, in a subsequent project application (NC–330), it is revealed that Cone Hospital had erroneously represented that the facilities of the hospital would be operated without discrimination. After an exchange of correspondence, Project Applications NC–86 and NC–330 were amended, with the approval of the North Carolina Medical Care Commission and the Surgeon General, to permit a waiver of the non-discrimination assurance.

12. Project Application NC–330 granted Cone Hospital $807,950.00 for the construction of a diagnostic and treatment center and a general hospital addition. The total cost of these facilities was $2,090,000.00. The contract under which the funds were allocated was approved by Cone Hospital on March 14, 1960, by the North Carolina Medical Care Commission on March 14, 1960, and by the Surgeon General on March 17, 1960.

1. Sections 131–126.1 through 131–126.17, General Statutes of North Carolina.

2. Sections 131–117 through 131–126, General Statutes of North Carolina.

3. 42 U.S.C. § 291 et seq.

It was represented in the approved application that "the requirement of non-discrimination has been met because this is an area where separate hospital facilities are provided for separate population groups * * *."

13. Project Application NC–311 granted $1,617,150.00 in federal funds to Wesley Long Hospital for new hospital construction. The total estimated construction funds required were $3,314,749.40. The original agreement under which these funds were allocated was approved by Wesley Long Hospital on June 23, 1959, by the North Carolina Medical Care Commission on June 24, 1959, and by the Surgeon General on June 30, 1959.

14. Project Application NC–353 granted $66,000.00 to Wesley Long Hospital for the construction of a laundry. The total estimated funds required to complete the project were $120,000.00. The original agreement under which these funds were allocated was approved by Wesley Long Hospital on April 27, 1961, by the North Carolina Medical Care Commission on April 28, 1961, and by the Surgeon General on May 15, 1961.

15. Project Application NC–358 granted $265,650.00 to Wesley Long Hospital for the construction of a hospital Nurses Training School. The total estimated funds to complete the project were $492,636.00. The contract under which these funds were allocated was approved by Wesley Long Hospital on December 7, 1961, by the North Carolina Medical Care Commission on December 8, 1961, and by the Surgeon General on December 15, 1961.

16. The aforementioned project applications of Wesley Long Hospital contained a certification that "the requirement of non-discrimination has been met because this is an area where separate facilities are provided for separate population groups and the State Plan makes otherwise equitable provision, on the basis of need, for facilities and services of like quality for each such population group in the area."

17. As of the date of the filing of this action, the United States had appropriated $1,269,950.00 for Cone Hospital, and the sum of $1,948,800.00 for Wesley Long Hospital. The entire appropriation of $1,269,950.00 had been paid to Cone Hospital, and $1,596,301.60 had been paid to the Wesley Long Hospital, through the Treasurer of the State of North Carolina, as of May 8, 1962. The funds appropriated to Cone Hospital amounted to approximately 15% of its total construction expense, and the funds appropriated to the Wesley Long Hospital amounted to approximately 50% of its total construction expenses.

18. Plans and specifications submitted by the defendant hospitals for each project were required to conform to Subpart M of the Public Health Service Regulations, which sets forth detailed standards for hospital construction and equipment. These standards constitute minimum requirements for construction and equipment considered necessary to insure properly planned and well constructed facilities which can be maintained and efficiently operated to furnish adequate service.

19. The Agricultural and Technical College of North Carolina, since 1954, and The Woman's College of the University of North Carolina, since 1957, both tax-supported State institutions of higher education, have been permitted to use the facilities of the Cone Hospital to provide clinical experience for their nursing students. The nursing students carry out assignments at the hospital under the supervision and direction of their own teachers, and not of the hospital staff. The hospital subsidizes the meals and laundry service of the students, and provides conference and instructional rooms for their use without charge. Cone Hospital has incurred direct costs of $3,337.59 in connection with the Agricultural and Technical College program since 1954, and has paid these costs from its own funds. The hospital has made direct contributions of $131,835.13 from its own funds to the nursing program of Woman's College since 1957, and has made a commitment of an additional $25,000.00. The hospital has also

provided scholarship loans in the additional amount of $10,500.00 for student nurses at Woman's College, which scholarship loans are administered entirely by the college, and not by the hospital, and are available only to nursing students selected by the college. The student nurses do not replace any personnel on the service staff of Cone Hospital, and the hospital has never been relieved of any of its personnel requirements through the use of student nurses. The principal benefit to Cone Hospital from the operation of the student programs is the intangible benefit to be derived from the creation of sources of well-trained nurses. The hospital, however, has no priority to employ any nurses graduating from either college, and must compete for the services of these graduates with other interested hospitals and employers. The monetary value of the services rendered the hospital by the student nurses is not commensurate with the substantial contributions the hospital has made of both its funds and facilities to the furtherance of the nursing educational programs.

## DISCUSSION

It has been clearly established that both defendant hospitals are pursuing racially discriminatory practices by barring Negro physicians and dentists from admission to their staff privileges, and by barring Negro patients from admission to their treatment facilities on the same terms and conditions as white patients. The defendants do not contend otherwise, and their defense has been confined to a showing that neither hospital is a governmental instrumentality, and that any discriminatory practices constitute private conduct which is not inhibited by the Constitution of the United States. This is the basis of the motion of the defendants to dismiss for lack of jurisdiction.

Since the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), it has been firmly established that the inhibitions of the Fifth and Fourteenth Amendments to the Constitution relate solely to governmental action, state or federal, and that neither amendment applies to acts by private persons or corporations. In Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948), the Supreme Court stated:

"Since the decision of this Court in the Civil Rights Cases, 109 U.S. 3, [3 S.Ct. 18, 27 L.Ed. 835] (1883), the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful."

To the same effect is Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 6 L.Ed.2d 45, 81 S.Ct. 856, 860 (1961), where it is stated:

"It is clear, as it always has been since the Civil Rights Cases, supra, that 'Individual invasion of individual rights is not the subject-matter of the amendment,' [109 U.S.] at p. 11 [3 S.Ct. at page 21] and that private conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it."

In light of the foregoing, the sole question for determination is whether the defendants have been shown to be so impressed with a public interest as to render them instrumentalities of government, and thus within the reach of the Fifth and Fourteenth Amendments to the Constitution of the United States. In making this determination, it is necessary to examine the various aspects of governmental involvement which the plaintiffs contend add up to make the defendant hospitals public corporations in the constitutional sense.

## SELECTION OF TRUSTEES

The Board of Trustees of Wesley Long Hospital, consisting of twelve residents of the City of Greensboro, is a self-

perpetuating body. It has the exclusive power and control over all real estate and personal property of the corporation, and all institutional service and activities of the hospital. No public authority has ever had any control whatever over the selection of the trustees, or any right to regulate, control or direct the business of the corporation. Consequently, the manner of selection of the Board of Trustees of Wesley Long Hospital is not a factor in determining whether the corporation is public in character.

A different situation exists with reference to Cone Hospital. Assuming that the Guilford County Medical Society, an agency authorized to appoint one member of the Board of Trustees, is a public agency, nine members of the fifteen-member Board, none of whom are appointed by a public agency, are to be perpetuated through the election of the Board of Trustees. Thus, the members of the Board appointed by public officers or agencies are in a clear minority, and the private trustees are decisively and authoritatively in control of the corporation. "The legal test between a private and a public corporation is whether the corporation is subject to control by public authority, State or municipal. To make a corporation public, its managers, trustees, or directors must be not only appointed by public authority but subject to its control." Norris v. Mayor and City Council of Baltimore, 78 F.Supp. 451, 458 (D.C. Maryland, 1948).

The rule enunciated in the Norris case seems to have been an established legal principle since 1819. In that year, Mr. Justice Story, in Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 671, 4 L.Ed. 629 (1819), stated:

"When the corporation is said, at the bar, to be public, it is not merely meant, that the whole community may be the proper objects of the bounty, but that the government have the *sole right, as trustees of the public interest, to regulate, control and direct the corporation,* and

its funds and its franchises, at its own good will and pleasure." (Emphasis supplied.)

The plaintiffs principally rely upon Commonwealth of Pennsylvania v. Board of Directors of City Trusts of City of Philadelphia, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957), to support their contention that the appointment of a minority of the members of the Board of Trustees of Cone Hospital by public officers and agencies materially affects the private character of the corporation. Such reliance is not well taken. In that case, the entire trust was administered by the Board of Directors of City Trusts of Philadelphia, a body created by an act of the Pennsylvania Legislature. No case has been cited or found which holds that the appointment of a minority of trustees by public officers or agencies converts the character of the corporation from private to public.

The entire record makes it quite clear that the Cone Hospital, originally chartered as a private corporation, is subject to no control by any public authority, and that the appointment of the minority members of its trustees by public officers and agencies has in no way changed the private character of its business.

### EXEMPTION FROM AD VALOREM TAX ASSESSMENTS

Both defendant hospitals are exempt from ad valorem taxes assessed by the City of Greensboro and the County of Guilford, North Carolina. The same is true with respect to the real and personal property owned by other private religious, educational and charitable organizations.[4] Surely it cannot be said that a purely local church, school or hospital becomes an instrumentality of the state, and subject to its control, by simply having its property exempt from ad valorem taxes. No authority has been cited for such a proposition. Indeed, the plaintiffs in their brief do not contend that ad valorem tax exemptions "in and of itself makes these hospitals agencies

---

4. Sections 105–296 and 105–297, General Statutes of North Carolina.

of the state and the United States government," but simply argue that all financial contributions from public funds, whether direct or indirect, must be considered in determining whether the defendant hospitals are agencies of the Government. While the subject was not discussed in Eaton v. Bd. of Managers of James Walker Memorial Hospital, 4 Cir., 261 F.2d 521, affirming 164 F.Supp. 191 (E.D.N.C., 1958), cert. den., 359 U.S. 984, 79 S.Ct. 941, 3 L.Ed.2d 934 (1958), the real and personal property of the James Walker Memorial Hospital was exempt, by state statute, from county and municipal ad valorem tax assessments.

It is concluded that the exemption of the defendant hospitals from ad valorem taxes is not a factor to be considered in determining whether the hospitals are public agencies.

## DEFENDANT HOSPITALS AS LICENSEES OF STATE OF NORTH CAROLINA

Since July 1, 1947, every hospital in the State of North Carolina, both public and private, has been required to secure a license from the State through the North Carolina Medical Care Commission.[5] Both defendant hospitals are licensed by the State, and have complied with the licensing procedures and standards prescribed by the North Carolina Medical Care Commission. The stated purpose for requiring hospitals to be licensed "is to provide for the development, establishment and enforcement of basic standards: (1) For the care and treatment of individuals in hospitals and (2) For the construction, maintenance and operation of such hospitals, which [operation] will ensure safe and adequate treatment of * * * individuals in hospitals * * *."[6] A license is subject to suspension or revocation under certain conditions.[7] The North Carolina Medical Care Commission is permitted

to make such inspection of hospital facilities as it deems necessary.[8] Under the rules and regulations of the North Carolina Medical Care Commission, all professional and non-professional personnel of hospitals must be given pre-employment physical examinations. Provision is made for the organization and qualification of medical staffs of hospitals, and certain facilities are required for operating rooms, delivery rooms, rooms occupied by maternity patients, and rooms occupied by children. There are certain requirements with respect to medical records and reports, the presence of professional registered nurses at all times, and the maintenance of sanitary kitchens. The Commission also reserves the right, in case any public funds will be used in construction of a hospital facility, to approve the plans in advance of construction.

As in the case of licenses issued to restaurants, the hospital licensing statutes and regulations are designed to protect the health of persons served by the facility, and do not authorize any public officials to exert any control whatever over management of the business of the hospital, or to dictate what persons shall be served by the facility.

In Williams v. Howard Johnson's Restaurant, 4 Cir., 268 F.2d 845 (1959), it was argued that if a state licensed a restaurant to serve the general public, such restaurant thereby became "burdened with the positive duty to prohibit unjust discrimination in the use and enjoyment of the facilities." (268 F.2d 845, 847.) In rejecting this argument, the Court stated:

"This argument fails to observe the important distinction between activities that are required by the state and those which are carried out by voluntary choice and without compulsion by the people of the state

---

5. Section 131–126.3, General Statutes of North Carolina.

6. Section 131–126.2, General Statutes of North Carolina.

7. Section 131–126.6, General Statutes of North Carolina.

8. Section 131–126.9, General Statutes of North Carolina.

in accordance with their own desires and social practices. Unless these actions are performed in obedience to some positive provision of state law they do not furnish a basis for the pending complaint. * * * The statute [restaurant licensing law] is obviously designed to protect the health of the community but it does not authorize state officials to control the management of the business or to dictate what persons shall be served. The customs of the people of of a state do not constitute state action within the prohibition of the Fourteenth Amendment."

■■ What the Court of Appeals for this Circuit has said with respect to licenses required of restaurants in Virginia is equally true with reference to licenses required of hospitals in North Carolina. In neither instance does the state attempt to exert any control over the personnel, management or service rendered by the facility involved. It is a matter of common knowledge that a license is required by members of practically all professions and most businesses. To hold that all persons and businesses required to be licensed by the state are agents of the state would go completely beyond anything that has ever been suggested by the courts. The Williams case, supra, is clear authority for the proposition that the license requirement for hospitals in North Carolina in no way changes the character of the institution from private to public.

## STUDENT NURSING PROGRAM AT CONE HOSPITAL

■ The plaintiffs allege that the participation of the Cone Hospital in training student nurses from Woman's College of the University of North Carolina and the Agricultural and Technical College of North Carolina, both State-supported institutions, should be considered in determining whether the institution is an agency of the State. The program is purely voluntary on the part of the hospital, and the only benefit received is that derived from the creation of a source of well-trained nurses. It is significant, however, that the hospital has no priority to employ any nurses graduating from either college, and must compete for the services of these graduates with other interested hospitals or employers. The monetary value of the services rendered the hospital by the student nurses is not commensurate with the substantial contribution the hospital has made from its own funds and facilities to the furtherance of the program. It is difficult to understand how this program, purely voluntary in nature, and carried on at a substantial monetary sacrifice to the hospital, in any way affects the private character of the hospital. The plaintiffs make the interesting, but in the opinion of the Court, completely untenable, argument that the hospital, in expending its resources to aid student nurses enrolled at the two State institutions involved, are doing the work of the State, and thereby become agents of the State, "subject to the constitutional restraints of governmental acts to the same extent as private persons who govern a company town." In other words, the plaintiffs make the novel argument that it is the giving of assistance to the State, rather than receiving assistance, that changes the character of the hospital. There is no suggestion that either educational institution exercises any control whatever over the hospital, or attempts to direct any of its policies. The program does not relieve the hospital of any of its personnel requirements. The students participating in the program are not employees of the State, and they participate in the educational program provided by the hospital on a purely voluntary basis. The assertion that the participation of the hospital in this program in any way affects the character of its operation is completely unsupported by any authority that has been brought to the attention of the Court. There is an interesting discussion of a somewhat related problem by Judge Matthews in Mitchell v. Boys Club of Metropolitan Police, D.C., 157 F.Supp. 101 (D.C.D.C.1957).

638

## ALLOCATION OF HILL-BURTON FUNDS TO DEFENDANT HOSPITALS

■ Both defendant hospitals have received substantial federal funds under the Hill-Burton Act[9] in aid of their construction and expansion programs. These funds were allocated to the defendants by the North Carolina Medical Care Commission, an agency of the State. The Cone Hospital has received $1,269,-950.00 under the Hill-Burton Program, or 15 per cent of its total construction expense, and Wesley Long Hospital has received, or will receive, under the same program, the sum of $1,948,800.00, or 50 per cent of its construction expense. All funds received, or to be received, by both hospitals were allocated and granted to, and accepted by, the hospitals with the express written understanding that admission of patients to the hospital facilities might be denied because of race, color or creed. This understanding was consented to by the Surgeon General of the United States and the North Carolina Medical Care Commission, acting pursuant to Section 291e(f) of Title 42 United States Code (Hill-Burton Act), and Public Health Service Regulations, 42 CFR § 53.112. These statutes and regulations permit the Surgeon General to waive the requirement of nondiscrimination on the basis of race upon a finding that separate but equal facilities are available for separate population groups.

Racial discrimination, it should be emphasized, is permitted, not required. As evidence of the fact that the defendants do not consider themselves obligated under the agreement permitting segregation, the Cone Hospital has for some time admitted Negro patients on a limited basis. Additionally, the defendants have repeatedly stated, both in their briefs and oral arguments, that they in no way rely upon the provisions of the Hill-Burton Act, or their agreement with the North Carolina Medical Care Commission, which permit discrimination. Under these circumstances, they earnestly contend, and at the time of the oral arguments both parties conceded, that the Hill-Burton funds received by the defendant hospitals should be considered as unrestricted funds.

The plaintiffs also place considerable importance upon the fact that recipients of Hill-Burton funds are required to conform to certain provisions of the Public Health Service Regulation which sets forth detailed minimum requirements and standards for the construction and equipment of hospitals. They emphasize that this is an additional and important involvement the defendants have with a public agency. It can fairly be said, however, that the only significance of these requirements is to insure properly planned and well constructed facilities that can be efficiently operated. It is significant that Section 291m of the Act[10] provides:

"Except as otherwise specifically provided, nothing in this subchapter shall be construed as conferring on any Federal officer or employee the right to exercise any supervision or control over the administration, personnel, maintenance, or operation of any hospital, diagnostic or treatment center, rehabilitation facility, or nursing home with respect to which any funds have been or may be expended under this subchapter."

In Eaton v. Bd. of Managers of James Walker Memorial Hospital, 4 Cir., 261 F.2d 521, affirming 164 F.Supp. 191 (E.D.N.C.1958), cert. den., 359 U.S. 984, 79 S.Ct. 941, 3 L.Ed.2d 934 (1958), the land upon which the hospital was constructed was donated by the city and county. These governmental units also made annual contributions to the operation of the hospital for a period of many years. These contributions in the form of land and money were held insufficient to make the hospital subject to the inhibitions of the Fourteenth Amendment.

The provisions of the Hill-Burton Act were recently considered by the Supreme Court of Appeals of the Commonwealth

9.  42 U.S.C.A. § 291 et seq.

10.  42 U.S.C.A. § 291m.

of Virginia in Khoury v. Community Memorial Hospital, Inc., 203 Va. 236, 123 S.E.2d 533 (1962). The hospital there was a non-stock, nonprofit corporation chartered under the laws of Virginia to establish, construct and maintain a hospital. More than half of its construction funds was contributed by the federal government under the Hill-Burton Act, another portion was contributed by the Commonwealth of Virginia, and the balance provided by local subscriptions. The management of the hospital was vested in a self-perpetuating board of trustees. The Court held, 123 S.E.2d, at page 538:

> "We next turn to the question of whether the use of federal and state funds for construction thereby constituted the hospital a public corporation.
>
> "The distinctions between a public and a private corporation have been so carefully drawn and so long recognized that we experience no difficulty in answering the question in the negative.
>
> \*    \*    \*    \*    \*    \*
>
> "The hospital is not owned by the federal or the state government, albeit federal and state funds may have made its construction possible. It is not an instrumentality of government for the administration of any public duty, although the service it performs is in the public interest. Its officers are not appointed by and are not representatives of government, notwithstanding that their authority stems from legislative enactment. Under these circumstances, the hospital falls squarely within the time-honored definition of a private corporation."

Since no state or federal agency has the right to exercise any supervision or control over the operation of either hospital by virture of their use of Hill-Burton funds, other than factors relating to the sound construction and equipment of the facilities, and inspections to insure the maintenance of proper health standards, and since control, rather than contribu-

tion, is the decisive factor in determining the public character of a corporation, it necessarily follows that the receipt of unrestricted Hill-Burton funds by the defendant hospitals in no way transforms the hospitals into public agencies.

## TOTAL GOVERNMENTAL INVOLVEMENT AND PARTICIPATION

■ While the plaintiffs argue that each of the contacts defendant hospitals have with governmental agencies is important, and each has a material bearing on the public character of both hospitals, the main thrust of their argument is that the totality of governmental involvement makes the hospitals subject to the restraints of the Fourteenth Amendment. For this argument they mainly rely upon Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). But a careful reading of this case does not support plaintiffs' argument. The Burton case involves the right of Eagle Coffee Shop, Inc., the lessee of the Wilmington Parking Authority, *an agency of the State of Delaware,* to refuse to serve the plaintiff food or drink solely because of his race. This is a situation far different from the facts in this case. After specifically defining the limits of its inquiry, the Supreme Court only held that "when a State *leases public property* in the manner and for the purpose shown \* \* \* the proscriptions of the Fourteenth Amendment must be complied with by the lessee as certainly as though they were binding covenants written into the agreement ·itself." (Emphasis supplied.) This same general principle of law had earlier been pronounced by this Circuit in City of Greensboro v. Simkins, 4 Cir., 246 F.2d 425 (1957), affirming 149 F.Supp. 562 (M.D.N.C.1957).

The defendants, on the other hand, argue that if neither of the contacts they have with a public agency makes them an instrumentality of government, the same result would necessarily follow with respect to the total of such contacts. In other words, the defendants argue that zero multiplied by any number would

**640**

still equal zero. They place principal reliance upon Eaton v. Bd. of Managers of James Walker Memorial Hospital, 4 Cir., 261 F.2d 521, affirming 164 F.Supp. 191 (E.D.N.C.1958), cert. den. 359 U.S. 984, 79 S.Ct. 941, 3 L.Ed.2d 934 (1958), in support of their position. The facts in the Eaton case more clearly resemble the facts in the case under consideration than any decision that has been cited by either side. The land upon which the hospital was constructed was conveyed to the James Walker Memorial Hospital by the city and county, to be held in trust for the use of the hospital so long as it should be maintained as such for the benefit of the city and county, with reverter to the city and county in case of its disuse or abandonment. This certainly involved a substantial financial contribution by public agencies to the hospital. The presence of the reverter clause makes the conveyance even more significant. The city and county made substantial appropriations to the hospital over a long period of time. There were other significant contacts with public agencies, all of which are referred to in the opinion. Additionally, while not discussed by either the District Judge or the Court of Appeals, presumably for the reason they were considered unimportant factors, the hospital property was exempt from city and county ad valorem taxes,[11] and the hospital was licensed by the North Carolina Medical Care Commission.[12] The only contacts Wesley Long Hospital has with public agencies are (1) exemption from ad valorem taxes (2) state license and (3) the receipt of Hill-Burton funds. All these factors were present in the Eaton case, if city and county funds have the same significance as unrestricted federal funds under the Hill-Burton Act. The only additional contacts Cone Hospital has with governmental agencies are that six of its fifteen trustees are appointed by public officers or agencies, and it aids two publicly owned colleges in their nursing program. It has been determined that these contacts have no bearing whatever on the public character of the hospital.

Both hospitals are effectively managed and controlled by a self-perpetuating board of private trustees. No public agency has the power to exercise any supervision or control over the management or operation of either hospital. Neither hospital is required to discriminate against any citizen because of race, and no right to do so is claimed by either hospital by reason of its agreement with the Surgeon General of the United States and North Carolina Medical Care Commission. Under these circumstances, it cannot be said that the defendants waived their privacy by accepting Hill-Burton funds. Board of Trustees of Vincennes University v. State of Indiana, 55 U.S. (14 How.) 268, 14 L.Ed. 416 (1852).

## DECLARATORY RELIEF

The plaintiffs drew into question the constitutionality of the separate but equal provisions of the Hill-Burton Act, and the United States moved to intervene pursuant to the provisions of 28 U.S.C. § 2403. The intervention was allowed. The United States has now moved for an order declaring unconstitutional, null and void the separate but equal provisions of Section 291e(f) of the Hill-Burton Act, 42 U.S.C. § 291e(f), and enjoining the defendants from discriminating on account of race or color in the admission of patients to their facilities.

It is a cardinal principle that courts do not deal in advisory opinions, and avoid rendering a decision on constitutional questions unless it is absolutely necessary to the disposition of the case. Barr v. Matteo, 355 U.S. 171, 78 S.Ct. 204, 2 L.Ed.2d 179 (1957). If the defendants were claiming any right or privilege under the separate but equal provisions of the Hill-Burton Act, it would perhaps be necessary to the disposition of the case to rule upon the constitutionality of those provisions.

11. Sections 105–296 and 105–297, General Statutes of North Carolina.

12. Section 131–126.3, General Statutes of North Carolina.

Here, however, as earlier stated, the defendants make no such claim, and it is unnecessary for the Court, as requested by the United States, to advise the Surgeon General with respect to his legal obligations under the Act. There has been no showing that the statute in question has resulted in depriving the plaintiffs or any other citizens of their constitutional rights. The only issue involved in this litigation is whether the defendants have become governmental agencies in the constitutional sense by the acceptance of public funds in the construction and equipment of their hospitals, and their other involvements with public agencies. The constitutionality of the separate but equal provisions of the Hill-Burton Act is not an issue, and a declaration as to its constitutionality is not necessary to the disposition of the case.

What the plaintiffs and the United States are really asking in their prayer for declaratory relief is an order desegregating all private facilities receiving Hill-Burton funds over a period of years, even though the funds were given with the understanding that the private facilities might retain their freedom to conduct their private affairs in their own way. This court is not prepared to grant the declaratory relief prayed for, thereby retroactively altering established rights, particularly when it is unnecessary to do so, in deciding the jurisdictional question.

## CONCLUSIONS OF LAW

1. The various contacts the defendant hospitals have been shown to have with governmental agencies, both federal and state, do not make them instrumentalities of government in the constitutional sense, or subject them to either the Fifth Amendment or the Fourteenth Amendment to the United States Constitution.

2. The defendants are private persons and corporations, and not instrumentalities of government, either state or federal, and none of the defendants are subject to the inhibitions of the Fifth Amendment or the Fourteenth Amendment to the United States Constitution.

3. This action is one brought by individuals seeking redress for the alleged invasion of their civil rights by other individuals or private corporations, and this Court has no jurisdiction over the subject matter of the action.

4. The motions for summary judgment by the plaintiffs and the United States should be denied, and the motion of the defendants to dismiss the action for lack of jurisdiction over the subject matter should be granted.