329 F.2d 710
 Hubert A. EATON, Daniel C. Roane, Samuel James Gray,
Vernetta E. Hussey and Leland M. Newsome, on
behalf of themselves and others
similarly situated, Appellants,
v.
Emory GRUBBS and the Board of Managers of James Walker
Memorial Hospital, a body corporate, Appellees.
 No. 9058.
 United States Court of Appeals Fourth Circuit.
 Argued Jan. 6, 1964.
Decided April 1, 1964.
 
 Jack Greenberg, New York City (Constance Baker Motley, Michael Meltsner, New York City, Robert R. Bond, Wilmington, N.C., and Conrad O. Pearson, Durham, N.C., on the brief), for appellants.
 Ronald D. Rowe and C. D. Hogue, Jr., Wilmington, N.C. (William L. Hill, II, Wilmington, N.C., on the brief), for appellees.
 Before SOBELOFF, Chief Judge, and HAYNSWORTH, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.
 SOBELOFF, Chief Judge.
 
 
 1
 The sole issue raised by this appeal is whether the State of North Carolina or the federal Government, or both, have become so involved in the conduct of the James Walker Memorial Hospital in Wilmington, North Carolina, that its activities are also the activities of these governments and performed under their aegis. If the answer is in the affirmative the mandate of the law is clear that the hospital may not discriminate on racial lines.
 
 
 2
 * Three Negro physicians and two of their patients brought this class action to enjoin the James Walker Memorial Hospital and its administrator from continuing to deny admission to staff membership and treatment facilities on a racially discriminatory and segregated basis. The District Court granted the hospital's motion to dismiss, relying on this court's earlier decision in Eaton v. Board of Managers of James Walker Memorial Hospital, 261 F.2d 521 (4th Cir.), cert. denied, 359 U.S. 984, 79 S.Ct. 941, 3 L.Ed.2d 934 (1959). The hospital urges us not to disturb the District Court's determination, insisting that the factual situation here does not differ from the first Eaton case, and that there has been no intervening change in the law.
 
 
 3
 The posture of the case requires us to accept the Negroes' statement of the facts as true. Indeed no dispute as to the truth of their allegations is intimated by the defendants.
 
 
 4
 The James Walker Memorial Hospital is the largest, and is alleged to be the best, hospital in the Wilmington, North Carolina, area. It is said that the hospital serves about 75% Of the white adult community. It was built at the beginning of the century by James Walker, a philanthropic citizen, on the site of a city hospital, which had been constructed in 1881 by the City of Wilmington and the County of Hanover for the treatment of the 'sick or infirm poor persons' of the city and county. This city hospital was razed to provide room for the new structure. Mr. Walker died before the new building was actually completed, but his will bequeathed to the city and county the moneys necessary for the purpose. When completed, the building was turned over to the city and county for use as a city hospital, continuing the work of the old hospital.
 
 
 5
 In 1901, the Board of Managers of the James Walker Memorial Hospital was chartered as a corporation. The chartering act provides that a majority of the initial board of directors should be elected by the city and county, and that the Board should then be self-perpetuating. The preamble declares it to be the purpose of the enactment 'that suitable provisions should * * * be made for the permanent maintenance of the hospital by the said City and County.' In the same year the city and county donated to the Board the new hospital building and the land upon which it stood with the following restriction:
 
 
 6
 'To have and to hold in trust for the use of the Hospital aforesaid, so long as the same shall be used and maintained as a Hospital for the benefit of the County and City aforesaid, and in case of disuse or abandonment to revert to the said County and City as their interest respectively appear.'
 
 
 7
 In the half-century following the city and county's donation of the hospital to the Board, both the city and county regularly appropriated moneys from their treasuries for the hospital's operation. In the years 1937-1939 they also paid $60,000, of the total cost of $100,000, for the addition of a North Wing. The United States supplied the remaining $40,000. Still another wing was added in 1944, financed by a grant of $508,000 from the United States under the provisions of the Defense Public Works Act. This Act specifies that funds shall be distributed 'on the basis of need and in determining need no discrimination shall be made on account of race, creed, or color.' 42 U.S.C.A. 1533(a)(4). In order to qualify for the grant, the hospital was designated a 'facility necessary for carrying on community life substantially expanded by the national defense program * * *.' 42 U.S.C.A. 1531.
 
 
 8
 In 1953, the method theretofore used by the city and county to finance the hospital's operating expenses was held to be in violation of the state constitution. Board of Managers of the James Walker Memorial Hospital of Wilmington v. City of Wilmington and New Hanover County, 237 N.C. 179, 74 S.E.2d 749 (1953). To carry on the work of the hospital, the city and county then substituted payments under a contract, into which they and the hospital entered, providing for per diem allowances for the care of welfare patients. It is alleged that the annual amounts of money given to the hospital pursuant to the contract were substantially the same as under the pre-1953 method.
 
 
 9
 Since our 1958 decision in Eaton, the Supreme Court has clarified and broadened the scope of inquiry where state action is alleged. In Burton v. Wilmington Parking Authority, 365 U.S. 715, at page 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961), the Court states that 'only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.' Just last year, this court in Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied, 84 S.Ct. 793 (March 3, 1964), recognized that 'in light of Burton doubt is cast upon Eaton's continued value as a precedent.' 323 F.2d 959, 968. Because of the Burton and Simkins decisions, we are of the opinion that the doctrine of res judicata does not apply here and that a new and independent examination must be made of the relationship between the governmental bodies and the James Walker Memorial Hospital. Christian v. Jamison, 303 F.2d 52 (5th Cir. 1962).
 
 
 10
 At the outset it should be noted that the present complaint is far more specific in its allegations of state involvement than the complaint in the first Eaton case. Also, it sets forth in detail the capital construction subsidies which have, it is asserted, perpetuated and enhanced the state's involvement in the hospital. As we said in Simkins, 'the opinion of this court (in the first Eaton case) does not deal with (governmental construction subsidies) and indeed shows no awareness of it; nor was this argued to the court. Certainly the decision can scarcely be relied on as authority for a proposition not considered.' 323 F.2d at 969. Finally, and most importantly, the first Eaton case did not consider the argument now being made that the 'private' hospital is fulfilling the function of the state.
 
 II
 
 11
 Perhaps the most significant evidence of the state's involvement in the hospital's affairs is the presence of the reverter clause in the deed. In this respect, the case for the present plaintiffs is stronger than in Simkins.[1] In Burton the Court held that when a state leases property to a private corporation so as to create a relationship of mutual benefits, responsibilities and obligations, the lessee must comply with the proscriptions of the Fourteenth Amendment as though they were binding covenants written into the lease. Here the reverter clause permitted the city and county effectively to control the use of the property because under the clause the property must be operated 'as a hospital.'
 
 
 12
 While it is true that this hospital, unlike the hospital in Simkins, did not participate in the Hill-Burton program, minutely detailed regulations were prescribed pursuant to North Carolina's participation in Hill-Burton projects. These regulations apply to this hospital even though it did not receive Hill-Burton funds. They lay down specific standards, effectively controlling the full range of day-to-day hospital administration and operation. They set forth minimum standards for the physical plant, and clinical, auxiliary and food services, and they are enforced by an agency of the state.
 
 
 13
 The complaint alleges that the hospital has been granted a tax exemption in excess of $50,000 per year. While a tax exemption, by itself, may not impose upon the recipient the restrictions of the Fourteenth Amendment, we are not required to look at each element of state participation in isolation. Tax exemption may attain significance when viewed in combination with other attendant state involvements. The court in the first Eaton case did not consider this, nor was the point argued; however, the Supreme Court, in 'sifting facts and weighing circumstances' in Burton, did note the existence of the tax exemption there as one of the 'activities, obligations and responsibilities' of the state. 365 U.S. 724, 81 S.Ct. 861.
 
 
 14
 The power of eminent domain has also been given the hospital, which it has exercised. In 1942, it filed a petition to condemn certain land for use in connection with the state-financed addition to the hospital facilities. The petition alleged that the hospital was 'a municipal corporation, a public body and body corporate and politic,' and the New Hanover County court, in granting the petition, described the institution as 'a public body, a body corporate and politic * * *.'
 
 
 15
 It is clear under North Carolina law that the power of eminent domain is governmental in nature. In order to exercise the power the grantee must furnish the public with 'some necessity or convenience which cannot be furnished without the aid of governmental power. * * * (And the) use which will justify the taking of private property under the exercise of the right of eminent domain is the use by or for the government, the general public, or some portion thereof as such, and not the use by or for particular individuals or for the benefit of particular estates.' City of Charlotte v. Heath, 226 N.C. 750, 40 S.E.2d 600, 605 (1946). See also Seaboard Air Line R. Co. v. Atlantic Coast Line R. Co., 240 N.C. 495, 82 S.E.2d 771, 784 (1954). Here, then, is a body exercising a segment of sovereign authority. Baldwin v. Morgan, 287 F.2d 750, 755 (5th Cir. 1961).
 
 
 16
 Finally, both the state and federal governments have granted at least two capital construction subsidies. While we do not find it necessary to examine the effect upon a recipient of subsidies of this nature in other circumstances, we note that here they fit into an already complete picture of governmental involvement.
 
 
 17
 In Burton, the Parking Authority leased only a portion of its property to the private restaurateur, but surely the result there would have been no different had all of the Authority's facilities been leased. The relationship of mutual benefits, responsibilities, and obligations, so important to the Court's conclusion there, would have been the same. Here, rather than entering into a long term lease, the state retains, and exercises, control over the use of the property by means of the reverter clause, fortified by the regulations. While a purely private hospital, dissatisfied with the state-imposed regulations, would be free to cease operating as a hospital and to convert the building to other purposes, the Walker Hospital may not escape the terms of its trust. It is obligated to continued performance of the function prescribed in its deed, as 'a Hospital for the benefit of the City and County aforesaid.'
 
 
 18
 The Fifth Circuit has held that the existence of a reverter clause, similar to the one found here, in a deed conveying a city-owned golf course to private individuals, was itself sufficient to constitute 'state action.' Hampton v. City of Jacksonville, 304 F.2d 320 (5th Cir. 1962). We find the Fifth Circuit's reasoning persuasive:
 
 
 19
 'Conceptually, it is extremely difficult, if not impossible, to find any rational basis of distinguishing the power or degree of control, so far as relates to the state's involvement, between a long-term lease for a particular purpose with the right of cancellation of the lease if that purpose is not carried out on the one hand, and an absolute conveyance of property, subject, however, to the right of reversion if the property does not continue to be used for the purpose prescribed by the state in its deed of sale. Appellees in this case stress the fact that there is no 'immediate control,' and that there is no 'present interest' in the City of Jacksonville. These are empty phrases when considered in connection with the absolute obligation on the part of the present owners of the property that they immediately, presently, and always use the leased property for golf course purposes, and no other. This is complete present control even though the daily operation is, of course, not subject in other matters to the City's direction.' Hampton v. City of Jacksonville, 304 F.2d 317, 322 (5th Cir. 1962).[2]
 
 
 20
 It is noteworthy that in Hampton the reverter clause was the only relationship the city retained with the property, while here there are strong additional indications of state involvement.
 
 
 21
 Unlike Simkins, where the hospital was originally conceived as a private institution, the present case exhibits the feature which the Court in Burton stressed in considering the status of the Parking Authority restaurant. The hospital presently under consideration began as a governmental project, publicly owned and controlled. In sum, we have a reverter supplemented by detailed regulations; the city and county have supplied construction funds for the expansion of the hospital plant; they continue to provide for its operational needs, grant it tax exemptions, empower it to condemn property and have supplied it with money to build on condemned land.
 
 
 22
 In addition to all this, counsel for the hospital declared in the course of his argument on appeal that a state-owned and operated hospital is soon to be built in the Wilmington area to replace the present James Walker Memorial Hospital, and that the equipment now being used by Walker Memorial will be transferred to the new hospital. This fact is significant and becomes even more so when considered with the other instances of state involvement. It demonstrates the pervasive nature of the state's role in the functioning of the defendant hospital, day by day and over the span of years.
 
 
 23
 It is not suggested that each of the enumerated factors has independent potency to invoke the constitutional requirement. It is enough for present purposes to hold, as we do, that the record in its entirety leads to the conclusion that the hospital is performing the state's function and is the chosen instrument of the state. Under our constitutional commitment the James Walker Hospital is therefore bound by the provisions of the Fourteenth Amendment to refrain from the discrimination alleged in the complaint.
 
 
 24
 Reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 25
 HAYNSWORTH, Circuit Judge (concurring specially).
 
 
 26
 While I dissented in Simkins,[1] and am still unpersuaded that the views I there expressed were incorrect, I must accept that en banc decision of the Court as binding upon me.
 
 
 27
 Accepting Simkins, there is no substantial basis for differentiating this case. While the capital subsidies granted here were not under the Hill-Burton Act, I find no logical basis for distinction on that score. Moreover, here there is strong suggestion and firm basis for a finding of fact that the hospital is, and always has been, a municipal hospital owned by the City of Wilmington and the County of Hanover, though operated during the last six decades by a self-perpetuating board which the City and County, in their interest and for their benefit, chose to constitute.
 
 
 28
 There has been no finding that the James Walker Memorial Hospital, as now constituted, is in fact a municipal hospital, but the evidence in the record which would support such a finding strongly militates against any possible distinction between Simkins and this case.
 
 
 29
 I, therefore, accept Simkins as controlling here and join in the judgment of the Court.
 
 
 30
 BOREMAN, Circuit Judge (concurring).
 
 
 31
 A majority of this court decided Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (1963). I joined with Judge Haynsworth in a dissenting opinion. Subsequently, certiorari was denied by the Supreme Court of the United States.[1]
 
 
 32
 Although I am still conscious of a lingering doubt as to the correctness of the holding in Simkins, I recognize the binding effect of that decision on the members of this court. The application of the principles therein declared unquestionably dictate the conclusions reached by Chief Judge Sobeloff and stated in his comprehensive written opinion in the instant case. Therefore, I unhesitatingly concur in the opinion and join in the judgment of reversal and remand.
 
 
 
 [1]
 In Simkins there was a reverter provision in the event of a sale of the hospital to an unqualified owner within twenty years after the completion of a hospital project. The reverter clause here contains no time limit
 
 
 [2]
 Judge Tuttle, who wrote the opinion for the Fifth Circuit, in referring to the first Eaton case said:
 'With reference to the Fourth Circuit case of Eaton v. Board of Managers of James Walker Memorial Hospital, supra, it appears that it was decided before the Supreme Court announced its decision in the Wilmington Parking case, supra. Being unable, as we are, to find any valid distinction between the effect of the lease in the Wilmington Parking Authority case and the sale with a reversionary interest in the Walker Hospital case, we doubt whether the (Circuit) Court of Appeals for the Fourth Circuit would have decided the Hospital case as it did had it followed the Supreme Court decision.' 304 F.2d at 323.
 
 
 [1]
 Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959
 
 
 [1]
 84 S.Ct. 793, March 3, 1964