Mildred M. SMITH, Agnes L. Stokes, and Patricia L. Taylor, Appellants,

v.

HAMPTON TRAINING SCHOOL FOR NURSES, a corporation, et al., Appellees.

No. 10312.

United States Court of Appeals Fourth Circuit.

Argued March 7, 1966.

Decided April 28, 1966.

Michael Meltsner, New York City (Jack Greenberg, Derrick A. Bell, Jr., New York City, and William Alfred Smith, Hampton, Va., on brief), for appellants.

W. Stephen Moore, Hampton, Va. (E. Ralph James, and James, Richardson & James, Hampton, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.

SOBELOFF, Circuit Judge:

Negro plaintiffs, two practical nurses and one registered nurse employed by defendant's hospital in Hampton, Virginia, were discharged for eating in a cafeteria maintained by the hospital for the exclusive use of its white employees. They brought an action in the District Court for the Eastern District of Virginia under 42 U.S.C. §§ 1981, 1983 (1958), seeking reinstatement with back pay. The District Court granted the hospital's motion for summary judgment, holding that at the time of the alleged discriminatory discharges, the law afforded plaintiffs no right to relief, and that later decisions of this court, declaring the illegality of such discrimination, ought not to be applied retroactively.

The Hampton Training School for Nurses, Inc., owns and operates the Dixie Hospital, a non-profit, tax-exempt institution in Hampton, Virginia. In 1956 it applied for and received over $1,700,000 in federal funds for new hospital construction under the Hill-Burton Act, 42 U.S.C. §§ 291–291o (1958), and the State of Virginia contributed an additional $173,000. Under the Act participating hospitals are subject to detailed regulation. See generally Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959, 964–965 (4th Cir. 1963). In addition, the 1956 application included a report by the State Health Commissioner, reciting that the Dixie Hospital "ha[d] given adequate assurance that the facility will be operated without discrimination because of race, creed or color."[1]

The building constructed with these federal and state funds included a spacious cafeteria seating approximately 700 persons, but under the policy pursued by the hospital, Negro employees were not permitted to eat there. White employees, regardless of rank, could use the facility, but Negro employees were required to eat in a small room in the basement. Later, Negroes were permitted to pass through the cafeteria line, but were still required to eat their meals in a small converted classroom down the hall. Although there were approximately 100 Negro employees, this classroom could accommodate only one third of this number at any one time.[2]

On August 8, 1963, plaintiffs passed through the cafeteria line as usual, but took seats in the main dining area to eat their meal. That afternoon they were reprimanded and warned not to eat in the all-white cafeteria again. The next day, however, plaintiffs again ate in the main cafeteria. There were no disturbances, and many of the white persons apparently welcomed them. Later in the day, the assistant administrator of the hospital informed plaintiffs that they had been discharged for failing to abide by the established policy of the hospital.

1. Although counsel suggested at oral argument that this assertion was not binding because it was not signed by a hospital official, it was attested by the state agency responsible for the screening of the applications, which transmitted the assurances given by the hospital. Moreover, while the hospital could have invoked § 291e(f) of the Act, which at that time permitted the maintenance of "separate but equal" facilities constructed with Hill-Burton funds, it failed to do so. The assurance of non-discrimination was in no way qualified.

2. The nurses' efforts to eliminate discrimination in the hospital's eating facilities are chronicled in the affidavit of plaintiff Mildred Smith, submitted prior to the entry of the District Court's order:

"After several months of this practice, many of us signed and prepared a petition to the director of the hospital complaining about the eating facilities provided for Negro personnel. A meeting was held with the director of nurses and William C. Walton, the administrator of Dixie Hospital, at which time Mr. Walton said he would present the matter to his board and give us a response within a month. At this meeting, Mr. Walton was insulting and indicated that we Negroes did not know when we were well off, that we were second class citizens, and that before coming to Virginia he had never called Negroes Mister or Mrs. No board action on our petition was ever reported to us.

"In May 1963 after more complaints, Negro nurses were permitted to pass through the main cafeteria line, but were forced to continue eating their meals in a small room located approximately 50 feet down the hall from the cafeteria. This room is a converted classroom and seats perhaps 35 people. Because there are over 100 Negro personnel who must eat there, the room is frequently crowded and persons must wait their turn for available chairs. This, combined with the necessity of leaving the main cafeteria and walking to the small room, necessitates rushing our lunch which frequently causes distress and a decrease in efficiency for the rest of the working day. In addition, the humiliation we experience when we see white persons, some of them maintenance personnel in dirty working clothes, seated in the main cafeteria while we are forced to leave because of our race, is impossible to explain."

In Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. Nov. 1, 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964), this court held that hospitals receiving funds under the Hill-Burton Act are subject to the Fifth and Fourteenth Amendments' prohibitions against racial discrimination, and ordered the elimination of such practices in both the staffing and admitting policies of the defendant hospital. We subsequently reached the same result in Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964), where the defendant hospital itself received no federal funds, but the State had undertaken detailed hospital regulation in connection with its general participation in the Hill-Burton program. As in Simkins, the Dixie Hospital's extensive participation in the Hill-Burton program established " 'that degree of state [and federal] participation and involvement in discriminatory action which it was the design of the [Fifth and] Fourteenth Amendment[s] to condemn.' [Burton v. Wilmington Parking Authority,] 365 U.S. [715] at 724, 81 S.Ct. [856] at 864, 6 L.Ed.2d 45 [(1961)]." Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d at 967. It is admitted by the defendant that the discharges were predicated solely on plaintiffs' refusal to abide by the hospital's established policy of racial discrimination in the maintenance of em-ployees' dining facilities. Clearly, these plaintiffs have established a valid claim for relief based on the hospital's interference with their constitutional rights.

Nevertheless, the Dixie Hospital has suggested that the Simkins doctrine should be held inapplicable here, because the case was not decided until November 1, 1963, three months after the challenged discharges. The District Court agreed with this theory. After noting several earlier decisions suggesting a rule opposite to Simkins,[3] the District Court cited Linkletter v. Walker, 381 U.S. 618, 85 S. Ct. 1731, 14 L.Ed.2d 601 (1961), for the proposition that "the Constitution neither prohibits nor requires retrospective effect" to be given to the Simkins decision; and concluded:

"[P]ublic policy dictates that, whatever the rights of a Negro discharged from employment following the decision in Simkins * * * no rights are created which should be accorded retrospective effect."[4]

We think the District Court was in error. The case is governed by the law as most recently declared. True, the Constitution is silent on the question of retroactivity, but it has long been established by the Supreme Court that until a case has been finally adjudicated on direct appeal it is controlled by the most recent statutory and decisional law.[5] On

---

3. See, e. g., Wood v. Hogan, 215 F.Supp. 53 (W.D.Va. March 8, 1963) (Hill-Burton hospitals held not subject to Fifth and Fourteenth Amendments); Simkins v. Moses H. Cone Memorial Hospital, 211 F.Supp. 628 (M.D.N.C. December 5, 1962) (same), reversed, 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S. Ct. 793, 11 L.Ed.2d 659 (1964); Khoury v. Comm. Memorial Hospital, 203 Va. 236, 123 S.E.2d 533 (1962) (same). Cf. Eaton v. Board of Managers of James Walker Memorial Hospital, 261 F.2d 521 (4th Cir. 1958), cert. denied, 359 U.S. 984, 79 S.Ct. 941, 3 L.Ed.2d 934 (1959).

4. Appellants argue that Simkins was not a "change" in the law, but simply an application of the principle of Burton v. Wilmington Parking Authority, supra, decided in 1961. After an exhaustive review in Simkins of the role played by state and federal governments in the administration of the Hill-Burton program, we quoted extensively from Burton, and stated that our decision was "controlled" by that case. We also noted that Burton had cast doubt on our earlier holding in Eaton v. Board of Managers of James Walker Memorial Hospital, supra. See also Hampton v. City of Jacksonville, 304 F.2d 320, 323 (5th Cir. 1962). However, since the present case arises on direct appeal, it is not necessary to wrestle with the elusive question of what is or is not a "change in the law."

5. See, e. g., Blaauw v. Grand Trunk Western R. Co., 380 U.S. 127, 85 S.Ct. 806, 13 L.Ed.2d 792 (1965), vacating and remanding, 333 F.2d 540 (7th Cir. 1964); Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941) (change in state decisional law

the other hand, when a controversy has been finally adjudicated and the judgment is later attacked in an independent collateral proceeding, there is no set principle governing the question of retroactivity.[6] This distinction was clearly recognized in *Linkletter* itself, where Mr. Justice Clark reviewed the past decisions and concluded:

> "Under our cases it appears (1) that a change in law will be given effect *while a case is on direct review, Schooner Peggy*, supra, and (2) that the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set 'principle of absolute retroactive invalidity.'" (Emphasis added.) Linkletter v. Walker, 381 U.S. at 627, 85 S.Ct. at 1736.

Although the Linkletter court elected not to give retroactive relief in collateral attacks on convictions finalized before the decision in Mapp v. Ohio, supra, it has consistently done so in cases arising on direct review. See, e. g., Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Thus, assuming without deciding that *Simkins* represented a change in the law, we are controlled by the law as most recently declared, since the case before us arises on direct appeal. See Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964)

(applying the *Burton-Simkins* analysis retroactively). Cf. Flemming v. South Carolina Electric & Gas Co., 239 F.2d 277, 279 (4th Cir. 1956). See generally Note, 71 Yale L.J. 907 (1962).[7]

The only remaining question is the remedy to be afforded these plaintiffs for the unlawful deprivation of their employment status at the hospital. Section 1983 authorizes federal courts in civil rights cases to grant broad relief "in equity, or other proper proceeding" and is designed to provide a comprehensive remedy for the deprivation of constitutional rights. See McNeese v. Board of Education, 373 U.S. 668, 83 S. Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961). These nurses were dismissed solely for protesting the hospital's prohibited practice of racial discrimination. There was no lawful basis for the practice or for the discharges, and the plaintiffs are entitled to be restored to the positions they occupied when they attempted to assert their rights. See Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Franklin v. Giles County School Board, 360 F.2d 325 (4th Cir. 1966). They are also entitled to an award of back pay, diminished by earnings in the interim. Otherwise they would not be made whole, and similar discriminatory discharges would be encouraged. Cf. Franklin v. Giles County School Board, supra.[8]

---

pending federal controls result in diversity case); United States v. Schooner Peggy, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801).

6. Compare Eskridge v. Washington State Board of Prison Terms & Paroles, 357 U. S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) (applying Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) to a 1935 conviction), with Linkletter v. Walker, supra (denying retroactivity to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961)). See also Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

7. The hospital's contention that its policy of segregation was tolerable under pre-

*Simkins* decisions is further weakened by its own express agreement not to discriminate on the basis of race, creed or religion in the operation of the new facility. See supra, note 1, and accompanying text.

8. Before the decision on its motion for summary judgment, the hospital moved to have the question of back pay determined by a jury. But the claim is not one for damages; it is an integral part of the equitable remedy of reinstatement, and should be determined by the court. See NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 47, 48, 57 S.Ct. 615, 81 L.Ed. 893 (1937) (No constitutional right to jury trial on back pay incidental to reinstatement); Agwilines, Inc. v. NLRB, 87 F.2d 146, 151 (5th Cir. 1936).

The case will be remanded to the District Court with directions to order the hospital to offer plaintiffs reinstatement and to fashion any other appropriate relief in light of this opinion.

Reversed and remanded.